STATE OF TEXAS EX REL PAN AMERICAN PRODUCTION CO. ET AL
v. CITY OF TEXAS CITY, TEXAS ET AL

No. A-6146. Decided May 22, 1957.
Rehearing overruled July 24, 1957.
(303 S.W. 2d Series 780.)

*Marsene Johnson, Jr.,* District Attorney, of Galveston, *Baker, Botts, Andrews & Shepherd, Hugh M. Patterson* and *Melbert D. Schwartz,* of Houston, *Joiner Cartwright* and *Charles F. Heidrick,* both of Beaumont, for petitioners.

*Nugent & Lilienstern,* of Texas City, for respondents.

MR. JUSTICE CULVER delivered the opinion of the Court.

This quo warranto proceeding, upon relation of Pan American Production Company and others, challenges the validity of a certain annexation ordinance enacted by the City Commission of the City of Texas City in so far as it includes submerged areas of Moses Lake and Dollar Bay. The trial court sustained exceptions to the petition and ordered dismissal. This judgment was affirmed. 295 S.W. 2d 697.

The annexation ordinance embraced approximately 3,500 acres of upland and some 2,000 acres of submerged land underlying the two bodies of water, all immediately north of the existing city limits. Moses Lake and Dollar Bay are tidal waters and extend inland from Galveston Bay. Actually they constitute one body with arms extended on either side of a short blunt peninsula. The submerged lands are the property of the State of Texas, subject to oil and gas leasehold estates of the relators purchased on bid from the State.

Petitioners assert that there are no inhabitants within the area in dispute nor is it fit or suitable for habitation; that there is no water-borne traffic through these waters and no need therein for municipal services such as police and fire protection; that the City has no good-faith intention of using the area for any municipal or city purposes, nor of furnishing to the area any of the facilities and services normally furnished by a municipal corporation within the area of its boundaries, but on the contrary seeks to annex this submerged land for the sole purpose

of taxing relators' property and obtaining additional revenue for the operation of the City's functions without any compensation of expectation of any corresponding returns or benefits to them; that the area is not suitable or necessary for city purposes and entirely unrelated to any present or foreseeable future economic needs of the City; that the annexation of this territory is unreasonable, arbitrary, unjust and void and will have the effect of taking the relators' property by taxation without due process of law. The trial court sustained exceptions to these allegations on the theory that the action of a home rule city in extending its boundaries is not subject to judicial review. The Court also sustained an exception to the allegations that the annexation ordinance was unauthorized by law, unreasonable, arbitrary and unjust on the ground that it was not supported by any allegation of fact. The trial court properly entered the order of dismissal and we affirm that judgment.

■ Article 11, Section 5 of the State Constitution confers upon cities of over 5,000 inhabitants the power to adopt or amend their charters subject to such limitations as may be prescribed by the Legislature. Among the enumerated powers granted to these cities by the Legislature is "The power to fix the boundary limits of said city, to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city, according to such rules as may be provided by said charter." Vernon's Ann. Stat., Art. 1175-2.

The only limitation fixed by the Legislature on the power of a city to annex additional territory is that the territory shall be *adjacent* to the city and not included within the boundaries of any other municipality. City of Houston et al v. State ex rel City of West University Place, 142 Texas 190, 176 S.W. 2d 928.

In the City of Gladewater v. State ex rel Walker, 138 Texas 173, 157 S.W. 2d 641, an annexation ordinance was assailed on substantially the same grounds as presented here. In that case the ordinance was enacted under the provisions of Art. 974g, Vernon's Ann. Civ. Stat., authorizing a city with a population of less than 5,000 to annex territory to the extent of one-half mile. We there reaffirmed the rule pronounced in State v. City of Waxahachie, 81 Texas 626, 17 S.W. 348, namely: "* * * The Legislature having prescribed a certain limit to which the boundaries of a city may be extended, without expressing any qualifications, the right to so extend them results, without regard to the use or character of the occupation of the annexed territory. * * *."

■ Petitioners rely on that portion of the opinion in City of Houston v. State ex rel City of West University Place, supra, (p. 931) where the Court implied that if the territory sought to be annexed by the City of Houston was so unrelated to the City's economic needs as to be wholly unreasonable and arbitrary the action would be subject to judicial review. That implied holding was not necessary to the decision. The Court had already stated the rule to be: "* * * This power of a Home Rule City to annex territory, being legislative power, is therefore not subject to being revised by the judicial power of the courts * * *," citing Gladewater, Waxahachie and Norris v. City of Waco, 57 Texas 635. But at any rate the conclusion of the petitioners here that the annexation ordinance was unreasonable and arbitrary is only to say that it was unreasonable and arbitrary because the land was not suitable, and had no relation to the City's needs, and it was for the purpose only of acquiring additional revenue and could afford no benefit to the owners of the property annexed. The decisions of this State have repeatedly held that such facts do not warrant intervention or review by the courts. In the rather recent case of State ex rel Graves v. City of Sulphur Springs, Texas Civ. App., 214 S.W. 2d 663, n.r.e., an annexation order of the City of Sulphur Springs was alleged to be unreasonable and arbitrary in that the territory sought to be annexed by the City was for the sole purpose of obtaining revenue for city purposes with no possible benefit to the inhabitants of the annexed territory; that it was a narrow strip two miles long and 800 feet wide and bore no relation to the present needs of the City or to its future growth. The Court of Civil Appeals, under the authority of Waxahachie, Gladewater and City of Houston, upheld the trial court's action in sustaining exceptions to those allegations and dismissing the suit. While the application for writ of error in that case was refused with the notation, "no reversible error," and for obvious reasons, the only point raised there was the sufficiency of plaintiff's allegations. The decision, therefore, is as authoritative as though it had received our unqualified approval.

■ The constitutional inhibition against taking private property for public use without compensation has reference solely to the exercise of the right of eminent domain and not to taxation for public use. And although the latter may operate harshly or unjustly this fact affords no power to the court to interfere with the legislative process. Norris v. City of Waco, 57 Texas 635. In that early case the Court said:

"As to this the courts have the power to inquire, for it involves questions judicial in character; but what property shall be embraced within a municipal corporation; and whether the same shall be taxed for municipal purposes, presents questions essentially political, which by the constitution are to be determined by the legislature, and an assumption by the judiciary of power to revise the action of the legislature in such respect would be a usurpation."

The matter of the boundaries and extensions thereof and the legislative prerogative in that respect has been delegated by the Legislature to the cities operating under the home rule amendment. The Court went on to hold that, not only can there not be equality of benefits to the individual taxpayers, but some may not receive any benefit at all, except such intangible benefits as may result to them from the preservation of order and protection of property. Surely it cannot be said that, even though petitioners' properties lie wholly within these submerged lands, there would never be an occasion when they would not need to call upon the municipal authorities for police or fire protection and even though they allege that the city has no present intention of furnishing any such services this is not to say that having been incorporated into the city limits they would not be entitled and could not rightfully demand such protection.

In Lenox Land Co., v. City of Oakdale, 137 Ky. 484, 125 S.W. 1089, writ of cert. dismissed, 231 U.S. 739, 58 L. Ed. 461, 34 Sup. Ct. 317, the Court ruled:

"* * * The extension or reduction of the boundaries of a city or town is held, without exception, to be purely a political matter, entirely within the power of the Legislature of the state to regulate. The established doctrine is that the State Legislature has the unlimited right to pass such laws for the annexation of territory to municipal corporations as in its judgment will best accomplish the desired end, and that a different method may be provided for each class. * * *."

Petitioners urge upon us the holding in Myles Salt Co. v. Board of Commissioners, 239 U.S. 478, 60 L. Ed. 393, 36 Sup. Ct. 204, where the Court decided that the property of Myles Salt Company, being an island and rising abruptly 175 feet or more above the surrounding marshy land, could not be benefited directly or indirectly by a drainage improvement and that to include this land within the drainage district solely for the purpose of deriving taxes for the benefit of other lands would be

inconsistent with the due process clause of the 14th Amendment to the United States Constitution.

A valid distinction is to be made, however, between a special tax or assessment to finance special improvements designed to benefit property or persons located within the particular taxing district, and on the other hand an ad valorem tax on all property within the taxing jurisdiction of the general welfare of the entire community. Benefits may be intangible and incapable of exact ascertainment, but it is constitutionally sufficient if taxes are uniform and are for public purposes in which the City has an interest. Morton Salt Co. v. City of Hutchinson, 177 Fed. 2d 889. In that case Chief Judge Phillips, in concurring, points to the fact that the company will receive indirect benefits through those conferred on company employees who reside within the city limits and in other ways. Kelly v. City of Pittsburg, 104 U.S. 78, 26 L. Ed. 658.

In Tri-City Fresh Water Supply District v. Mann, 135 Texas 280, 142 S.W. 2d 945, we pointed out that a district created for the purpose of conferring special benefits to its inhabitants does not have such powers as are granted by the Constitution and statutory enactments to cities and towns operating under home rule charters. The district is limited to such powers as are expressly delegated to it by the Legislature and by necessary implication.

The Supreme Court of the State of Florida in State ex rel Davis v. City of Stuart, 97 Fla. 69, 120 So. 335, 64 A.L.R. 1307, held invalid an Act of the Legislature abolishing the municipal government of the town of Stuart and establishing a new municipality by the same name, but with its boundaries extended so that the original area of the town was increased from about 640 acres to approximately 9400 acres, and including rural lands far removed and isolated from the town proper, saying that where the Act constitutes arbitrary, unreasonable and flagrant invasion of personal and property rights guaranteed by other provisions of the Constitution, the Act is subject to judicial review as any other class of legislation. At the same time the Court recognized (p. 341) that the weight of authority in this country seems to be to the contrary and that the legislative power in this regard is held generally to be, for practical purposes, plenary and unlimited in the absence of express constitutional restrictions.

A somewhat similar rule is announced in State ex inf. Mal-

let ex rel Womach v. City of Joplin, 332 Mo. 1193, 62 S.W. 2d 393, namely, that while the Court is without power to review the City's exercise of discretion in extending its boundary, it will, however, review the results of determining reasonableness, holding: "It was not for the trial court to decide whether, upon the facts shown to exist, the extension of the boundaries was necessary, but to determine whether or not, upon the facts shown to exist, reasonable men would differ as to the necessity of the extension."

While the arguments made in support of the positions taken by these two eminent courts are strongly persuasive and supported by cogent reasoning, we think they do not compel a reversal of the stand taken by our Court and adhered to over a long period of years.

Petitioners contend further that this submerged area is not subject to annexation because it is not "territory," nor "adjacent territory" nor "additional territory" within the meaning of Art. 1175-2.

■ The term "adjacent" is not a word of fixed or definite meaning. The authorities are almost unanimous in according to that term the meaning of "neighboring or close by" or "in the vicinity of and not necessarily contiguous or touching upon." The meaning is determined to some extent by the context or by the subject matter. State v. Camper, 261 S.W. 2d 465, wr. ref. See Words and Phrases, "Adjacent." Moses Lake and Dollar Bay are landlocked except for a rather narrow passage into Galveston Bay. The area embraced within the annexation ordinance including the submerged land, was not only adjacent in the sense of "neighboring" and "close by" but was contiguous to the existing city limits. The northern boundary line of the city limits before annexation formed a common boundary line with the area sought to be annexed. Moses Lake and Dollar Bay are surrounded on the north, east and south by upland included within the annexation ordinance and the total area at its outer edge was from two to three miles distant from the city limits prior to the adoption of the ordinance. Petitioners say that the submerged lands are not "adjacent" because the words "additional territory lying adjacent to such city" as used in Art. 1175-2 connote only that territory that bears a reasonable relation to the lands already occupied by the City and refers to such lands that would be of some use to and suitable for the needs and requirements of the annexing city and have some features in common therewith. Under the authorities cited above we

hold that the usual meaning of the word "adjacent" must be applied to the words of the statute and that the Legislature used the term in the sense of being "contiguous" and "in the neighborhood of or in the vicinity of," without reference to the character of the land or the use to which it is put.

We held in City of Wichita Falls v. Bowen, 143 Texas 45, 182 S.W. 2d 695, 154 A.L.R. 1434 that although Sheppard Field, a U.S. military base, was under the exclusive jurisdiction and control of the federal government, this fact constituted no legal objection to its annexation within the city limits and overruled the contention that it was not adjacent in the sense used in Art. 1175-2.

In support of their contention petitioners cite us to State ex rel Childs v. Village of Minnetonka, 57 Minn. 526, 59 N.E. 972, 25 L.R.A. 755. In that case the Court had under consideration a statute providing for the incorporation of villages. The statute read: "Any district, sections or parts of sections which has been platted into lots and blocks, also the land adjacent thereto * * * said territory containing a resident population of not less than 175, may become incorporated as a village." The territory sought to be incorporated as a village contained nearly 35 square miles. In this area there were some 17 or more tracts which had been platted but were separated by farm and uncultivated lands. The Court points out that the evidence did not indicate with any certainty which of the numerous plats was to be the nucleus of the proposed village. The Court said that the term "lands adjacent thereto" meant those lands that had such close proximity as to be suburban in character and to have some unity of interest with the proposed village, but that the statute did not contemplate that remote territory having no natural connection and no adaptability to village purposes should be included. We do not regard this interpretation of the Minnesota statute for incorporation of villages as to have any bearing upon the problem before us.

The case of Hauge v. City of Des Moines, 197 Iowa 907, 196 N.W. 68, deals with a district created by the City for the purpose of extending and improving a certain street. The Court merely held that the plaintiff was entitled to be heard on the issue as to whether or not her lot was adjacent to the improvements. The property was not being annexed or taxed by the City for general purposes. Thus the holding is not in point.

Lastly petitioners assert that a home rule city is without

authority of law or power to annex state owned submerged bodies of land along the Gulf Coast such as we are dealing with here.

While no Texas appellate court has expressly passed upon this question so far as has been called to our attention, there are Acts of the Legislature indicating most strongly the contrary of petitioners' position in this respect.

In City of Oak Cliff v. State ex rel Gill, 97 Texas 383, 79 S.W. 1, it is shown that the Legislature by special enactment extended the boundaries of the City of Dallas so as to include a segment of the Trinity river, the underlying bed of which belonged to the State of Texas as much so as the submerged lands along the Gulf Coast. Also, the following articles of our statutes, namely, 1178a, 1179, and 1180a would rather clearly indicate that it was not contrary to the legislative will nor forbidden that parts of navigable streams and submerged lands, inland or coastal, be included within the boundaries of home rule cities. Our attention is called to Special Laws, 28th Legislature, ch. 37, enacted in 1903, that, in providing the City of Galveston with a charter, defines the city limits so as to include parts of Galveston Bay and other waters. If the Legislature has that power then the power has been delegated to home rule cities.

Petitioners rely on Mahood et al v. State ex rel Davis, 101 Fla. 1254, 133 So. 90. In that case a small village or hamlet, known as Miami Shores, was located west of Biscayne Bay. A majority of its electors, some 38 in number, proceeded to organize a municipal corporation in certain statutory provisions and attempted to include within its corporate limits territory lying east of Biscayne Bay. The Court held that there was no statutory authority permitting the creation of a municipal corporation to embrace territory not a part of the village or hamlet and the citizens were limited to forming a municipal government having jurisdiction over the village. We do not regard this case as authority for the contention that a Texas Home Rule City cannot annex submerged land belonging to the State of Texas, nor for the proposition that the submerged lands in our case are not "adjacent territory."

Petitioners argue that if these lands are annexed the leasehold interest of the petitioners as well as any future leases that may be granted by the petitioners as well as any future leases

that may be granted by the State will be taxed on an ad valorem basis. They say that inasmuch as rentals and bonuses accrue to the State for the benefit of the State school funds, taxation by the City will necessarily reduce the amount bid for these leases and thus affect adversely and diminish the revenue derived by the State from this source. While admittedly this result might obtain to some degree, we think the prospect is not sufficient to set aside this ordinance. If this consequence is thought to be evil the Legislature may deny to any municipality the right to extend its boundary lines over onto submerged lands belonging to the State of Texas and thus put another limitation upon the City's power of expansion.

The apprehension, such as that voiced in the dissent to the decision in the Sulphur Springs case, that a city may thus extend its boundaries indefinitely is not warranted. As to whether or not a proposed annexation includes territory that is not adjacent becomes a law question and the courts will determine whether or not it lies "in the neighborhood of" or "in the vicinity of" and contiguous to the annexing city. We hold as a matter of law that the territory here sought to be annexed by the ordinance in question is *adjacent* territory and the ordinance must be held validly within the legislative powers of the City Commission.

The judgments of the trial court and the Court of Civil Appeals are affirmed.

Opinion delivered May 22, 1957.

MR. JUSTICE NORVELL joined by JUSTICES GRIFFIN, SMITH and WALKER, dissenting.

From the standpoint of the political theorist plausible arguments may undoubtedly be marshalled to support the proposition that the internal governmental organization of a state or commonwealth is purely a political matter and that one unjustly treated by reason thereof should address his appeal to the legislative rather than to the judicial branch of government. However, as I understand the decision of the Supreme Court of the United States in Myles Salt Co. v. Board of Commissioners, 239 U.S. 478, 36 Sup. Ct. 204, 60 L. Ed. 393, it is a flat holding to the contrary of the proposition stated. When confronted with the provisions of the Fourteenth Amendment to the Constitution of the United States, the distinction between a Louisiana drainage district and a Texas city escapes me. Neither drainage

districts, cities nor other forms of state internal organizations are mentioned in the amendment, which simply provides that no state shall "deprive any person of life, liberty or property, without due process of law." This wording applies to action by the state itself or by any and all of the political subdivisions thereof, no matter how broad or limited their governmental powers may be. The ·Myles Salt Company case holds that the inclusion of certain lands within the boundaries of a political subdivision of a state may constitute a deprivation of property without due process of law.

Under this holding municipal annexation proceedings which by Texas law necessarily operate to subject property to taxation cannot be removed beyond the scope of the Fourteenth Amendment by classifying them as being political in character. The distinction between the drainage district on one hand and the city on the other is not found in the substantial nature of such organizations — both are governmental and political—, but rather in the scope of benefits conferred by the respective organizations and their relationship to the public at large. The deprivation of property by the simpler district having for its purpose the one function of draining lands may be much clearer than a somewhat similar but vastly more complicated situation involving a city which is a highly complex organization performing multitudinous governmental and proprietary functions. While the mere taxing of land which cannot be drained makes obvious the fact that one man's property is being "taken" for the benefit of another, the exercise of jurisdiction by a city over a given territory may present a problem difficult of solution because of the necessary consideration of municipal needs and the various detriments and benefits, direct and indirect, usually attendant upon including lands within the boundaries of a city. This circumstance, however, relates to the question of whether there has been a deprivation of property and constitutes no basis for saying that the simple organization is controlled by the Fourteenth Amendment while the complex organization is essentially political and hence beyond the reach of the judicial power.

In my opinion the Court of Civil Appeals correctly held that the due process clause of the general constitution has application to the annexation of additional territory by a city. The opinion of that court also suggests the controlling factors which determine the validity of an annexing ordinance. Benefits or lack thereof accruing to the owner of property sought to be

annexed cannot be made the sole test of the validity. Property is held subject to the general good, and if essential to municipal needs, a city's action in assuming authority or jurisdiction over such property cannot be gainsaid, although no direct benefit accrues to the owner of the property. When, however, property that will receive no benefits from the municipality, either immediate or reasonably prospective, which is wholly unrelated to the city's present or reasonably prospective economic or municipal needs is subjected to the jurisdiction of a city and its taxing powers by means of an annexation ordinance, then such action must be considered as unreasonable and arbitrary and hence invalid as constituting an unwarranted deprivation of property within the meaning of the Fourteenth Amendment to the federal Constitution.

The Court of Civil Appeals seemingly regarded the allegations of the petitioner's pleadings as being insufficient to contradict the presumption of constitutionality which attends legislative actions. In so doing, I think the court clearly erred. While the ultimate question of the constitutionality of the ordinance may be one of law, this does not preclude a consideration of facts. When in the nature of things, knowledge of a particular economic, local geographic, or other special situation is desired and cannot be supplied by judicial notice or common knowledge, it is essential that evidence be received. This principle was recognized by the Court of Civil Appeals when it said that:

"* * * a claim of deprivation of property without due process is to be determined always as a matter of law, never as a question of fact, although such determination may involve the finding of facts. We quote the text of 82 C.J.S., Statutes, Sec. 79, p. 134, 'Whether a seeming act of a legislature is or is not a law is a judicial question to be determined by the court, and not a question of fact to be tried by a jury, even though a determination of the question may involve a finding of fact.' "

The majority opinion sufficiently summarizes the allegations of the petition for the present purpose. Briefly, the territory sought to be annexed embraces some 2,000 acres of land owned by the State of Texas which underlies the waters of the sea. It is alleged that such territory is unsuited for human habitation, that it has no need for urban services, that it is wholly unsuited to any legitimate municipal need, either immediate or prospective, and was annexed for the sole purpose of taxing petitioners' mineral estates underlying the water of the bays. Petitioners complain that while the Court of Civil Appeals recog-

nizes the right of judicial review, it nevertheless effectively deprives them of such right by substituting a set of hypothetical facts in lieu of those alleged by the petitioners. In my opinion there is merit in this complaint. We are dealing with a local situation beyond the ken of common knowledge. To my mind, considering the total lack of evidence, it is mere surmise to speculate upon the possible municipal need the 2,000 submerged acres would fulfill. If we may mentally envision ports, docks, parks for fishing and boating, turning basins and the like, in order to justify the present attempted annexation, could not a similar technique be employed to authorize municipal annexation of a drilling platform, three leagues seaward from the Texas shore line? Speculations outside the field of common knowledge constitute poor guides for the definition of property rights, and this case calls for the same species of factual information that was deemed pertinent in Borden's Farm Products v. Baldwin, 293 U.S. 194, 55 Sup. Ct. 187, 79 L. Ed. 281, wherein the 1933 New York Milk Control Law was attacked as being violative of the Fourteenth Amendment. In the case mentioned the Supreme Court of the United States, in an opinion by Chief Justice Hughes, reversed a decree of the District Court and remanded the cause for a hearing upon the facts. In the opinion it was said that:

"In view of the peculiar nature and effect of this provision [of the Milk Control Act], and of the novel and important constitutional question that it presents, we think that the complaint should not have been dismissed for inufficiency upon its face and that the plaintiff is entitled to have the case heard and decided with appropriate findings by the trial court, unless it satisfactorily appears, upon facts of common knowledge or otherwise plainly subject to judicial notice, that the provision should be sustained as resting upon a rational basis consistent with constitutional right."

In speaking of the nature of the presumption relating to the validity of legislative action, Chief Justice Hughes said:

"Respondents invoke the presumption which attaches to the legislative action. But that is a presumption of fact, of the existence of factual conditions supporting the legislation. As such, it is a rebuttable presumption. (Citing authorities.) It is not a conclusive presumption, or a rule of law which makes legislative action invulnerable to constitutional assault. Nor is such an immunity achieved by treating any fanciful conjecture as enough to repel attack. When the classification made by the legislature

is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary."

It is perhaps worthy of note that Justices Stone and Cardoza concurred in the result with a memorandum, which inter alia contained the following:

"We are in accord with the view that it is inexpedient to determine grave constitutional questions upon a demurrer to a complaint, or upon an equivalent motion, if there is a reasonable likelihood that the production of evidence will make the answer to the questions clearer."

The answer to the question of the validity of the annexation ordinance may be more justly and accurately given after the hearing of evidence. If there be a substantial constitutional question involved it cannot be resolved upon the basis of common knowledge or judicial notice alone, nor by resort to presumptions of doubtful application. It follows then that the petitioners are entitled to be heard upon the facts. In such a hearing and only then can it be satisfactorily determined if the annexation ordinance is arbitrary and void. I would reverse the judgments of the courts below and remand the cause for development of the facts. I accordingly respectfully dissent from the order of affirmance.

Opinion delivered May 22, 1957.

Rehearing overruled July 24, 1957.