HARRIS COUNTY, Texas, Appellant,

v.

Harold SELLERS et al., Appellees.

No. 15758.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 3, 1971.

Rehearing Denied June 24, 1971.

Joe Resweber, County Atty., B. R. Kerr, First Asst. County Atty., Billy E. Lee, Asst. County Atty., Houston, for appellant.

Robert W. Simmer, Houston, for appellee, Joyce Karbach Watson.

Reynolds, White, Allen & Cook, Grant Cook, Houston, for appellee, Harold Sellers.

BELL, Chief Justice.

This is an appeal from a judgment of the trial court declaring that under law the interest earned on trust funds paid into court pendente lite and invested by Harris County in the County depository in a separately designated account, pursuant to court order, did not belong to the County, but belonged to the person owning the principal of the fund.

This case originated when North American Insurance Company on July 16, 1970 filed a suit impleading Harold Sellers and Joyce Karback Watson who were adverse claimants to the proceeds of an insurance policy on the life of Thomas Douglas Watson, Jr., deceased, in the amount of $1,-000,000.00. The net proceeds amounted to $992,570.00. The net amount was tendered into the registry of the court and on the same day the court entered its order authorizing and directing the payment into the "Registry" of the court to be there retained pending further orders. It discharged the insurance company from liability.

On July 27, 1970 Sellers filed a motion asking the court to order Ray Hardy, District Clerk "to place said funds in the control and custody of the court" and that the funds be deposited in a bank in Houston and the bank be directed to invest the funds so the deposit would earn interest for the benefit of the owners of the fund.

On August 6, 1970 by order signed August 7 the court rendered its order, approved by Sellers and Mrs. Watson, directing the District Clerk and/or the County Auditor to keep and maintain a separate trust account for the use and benefit of Sellers and Watson and to invest and reinvest the fund at interest while the fund remained in the registry of the court. The order directed the parties at interest to make all reports required by law respecting income to said trust account in lieu of such duty on the part of the Clerk and relieved the Clerk of the duty to make reports to the claimants. It provided the Clerk should, on final judgment, pay the principal and interest as directed by the court and that Harris County would be entitled to a reasonable fee to be paid from the funds for keeping the funds in the registry of the court and incidental accounting expenses incurred. The order made no designation of where the fund should be invested.

On October 7, 1970, the court ordered that the fund be invested in time deposits at the Continental Bank and that the deposit be in the name of "Ray Hardy, District Clerk of Harris County, and his successors in office" and that no funds be withdrawn or transferred except on orders of the court. The fund so deposited was to be secured by United States securities to be placed at the First City National Bank of Houston.

On October 8, 1970, Harris County filed its plea of intervention. In this plea it was asserted that under Articles 1656a and 2558a, Sec. 4a, Vernon's Texas Civil Statutes, all trust funds in possession of the District Clerk in his official capacity were to be deposited in the County depository by the County Auditor and that all interest would belong to the County to be placed in

the General Fund. Prayer was that it be determined that interest be paid into the County General Fund as it accrued. It attacked the orders of August 7 and October 7 for want of notice of the filing of or hearing on the Sellers and Watson motions.

On October 22, 1970, the court entered another order after hearing the County's plea of intervention. It recited that the District Clerk, Ray Hardy, and County Auditor, S. Grady Fullerton, though not parties, appeared and all parties announced ready for trial. It ordered that the fund which had been deposited in the County depository be transferred to the Continental Bank when the time deposit that had been made matured. The order found that the acts of the Clerk and Auditor in transferring funds from the County Depository for Trust Funds on order of the court was ministerial. It ordered that the Clerk and Auditor transfer the fund and the interest to accrue on October 23 to the Continental Bank. Further, it provided that Sellers and Watson waived any liability of the Clerk and Auditor with regard to the principal after it was removed to and acknowledged by Continental Bank. The Court confirmed its orders of August 7 and October 7.

On November 6, 1970, both Hardy and Fullerton filed an intervention, asserting their duties under Articles 1656a, 1656b and 2558a, V.A.C.S., and contending it was their duty to deposit all trust funds in the depository bank for Harris County and to pay the interest into the General Fund of the County. They also assert that pursuant to the court's order of August 7, 1970, the fund in question had been deposited in the depository bank for Harris County.

On November 6, 1970, the court severed the cause as between Sellers and Watson, on the one hand, and Harris County, Hardy and Fullerton, on the other hand, and rendered a final judgment declaring, finding and determining that the interest earned and to be earned belonged to either Sellers or Watson whichever was finally determined to be entitled to the proceeds of the policy. The order decreed that the fund, including the interest that had been earned from September 23 to October 23, and all interest to be thereafter earned, be deposited in "The Houston National Bank, The Harris County Trust Fund Depository Bank, and that a separate Trust Account for the benefit of the claimant of such fund who is ultimately determined to be entitled thereto" be maintained. The fund was to earn interest as provided in the Harris County Trust Fund Depository Contract. The special separate fund was to be maintained in the name of "Ray Hardy, District Clerk of Harris County, Texas, and his Successors in Office." The order also provided that Harris County would be entitled to a reasonable fee to compensate it for its accounting and administrative expenses incurred in handling the fund.

The trial court made findings of fact and conclusions of law, the material ones being as follows:

1. The court on July 16 accepted the tender made by the plaintiff in the interpleader suit and authorized said plaintiff to deposit the funds in the registry of the court to be retained in the registry of the court pending further orders.

2. On July 24 the auditor deposited the fund in the Houston National Bank, the Harris County Depository Bank for Trust Funds.

3. On August 24 and September 23, the auditor reinvested the funds in the same manner. The interest earned between July 24 and September 22 was deposited in the General Fund of the County.

4. That before making the deposits the auditor had actual notice of the orders of the court and their contents with respect to investment of this fund that had been entered prior to the date of the particular investment.

There were 13 Conclusions of Law, the substance of which we will notice.

1. Harris County is not entitled to interest earned, or to be earned, but it should be paid to whichever of the claimants determined to be the rightful owner on final trial.

2. The successful claimant to the fund was entitled to all interest "as a natural increment of the Fund."

3. Harris County would be entitled to a reasonable fee for handling the investment of the Fund.

4. The court, in the acceptance and administration of the funds deposited into the registry of the court, sits as a Court of Equity, its jurisdiction being basically derived from Article 5, Sec. 8 of the Texas Constitution, Vernon's Ann.St.

5. Article 1656a, Tex.Civ.Stat., does not on its face entitle Harris County to the interest on the fund deposited in the registry of the court.

6. If Article 1656a does entitle Harris County to the interest, it is contrary to Article 1, Sections 17 and 19 and Article 5, Section 8, of the Texas Constitution and the Fifth Amendment of the United States Constitution as made applicable to the States by the Fourteenth Amendment to the United States Constitution.

7. The Texas Legislature did not intend by the passage of Article 2558a, Section 4a, to allow counties of Texas to recover interest on Trust Funds deposited in the registry of the court, in actions such as the case at bar, awaiting determination of the rightful owner except to the extent that the County should be reimbursed for expenses incurred in handling the fund.

8. Said Section 4a of Article 2558a does not on its face authorize recovery by Harris County of any part of the interest over and above a fair and reasonable fee to be paid to the County as an offset to expenses incurred in handling the fund for the benefit of the litigants.

9. If said Section 4a authorizes the recovery of all interest on the fund involved, it is contrary to Article 1, Sections 17 and 19, and Article 5, Section 8 of the Texas Constitution and the Fifth Amendment to the United States Constitution as made applicable to the States by the Fourteenth Amendment to the United States Constitution.

10. The court, sitting as a Court of Equity, has discretion in the acceptance and handling of the deposit into the registry of the court by the plaintiff at the time of institution of the suit and that the statutory construction of Articles 1656a and 2558a, by Harris County, would detract from and contravene the discretionary authority of the court sitting as a Court of Equity, pursuant to the jurisdictional powers of the court as prescribed by Article 5, Section 8 of the Texas Constitution.

Article 1656a provides that in all counties having a population of 190,000 or more the auditor shall prescribe a system of accounting for the county and forms to be used by the district clerk * * * in the collection and disbursement of county revenues, funds, fees "and all other moneys collected in an official capacity whether belonging to the county, its subdivisions or precincts, or to, or for the use or benefit of, any person, firm, or corporation." It then provides that the auditor "shall have power to adopt and enforce such regulations not inconsistent with the Constitution and laws as he may deem necessary * * * to the speedy and proper collection and checking of, and accounting for revenues and other funds belonging to the county or to any person, firm, or corporation for whom any of said officers may have made collections, or for whose use and benefit they may have received or may hold such funds. All the fees, commissions, funds, and moneys * * * shall be turned over to the County Treasurer * * * and such money shall be deposited in the county depository in a special fund to the credit of such officer and draw interest for the benefit of the county,

which funds, when so deposited * * * shall be secured by the bond of such depository." It is then provided the officer should draw checks on the Treasurer for salaries and expenses or "in payment to the county or the persons, firms, or corporations to whom said funds may belong * * * The deposit of funds in the County Treasury shall not in any wise change the ownership of any fund so deposited * * *"

Article 1656b merely states the Commissioners Court may provide for a "depository for the trust funds * * *"

Article 2558a, Sections 1–3, require the Commissioners Court to contract with a bank for it to become a depository for "Trust Funds in possession of the County and District Clerks" and prescribes the procedure to be followed in taking bids and in making the selection of the bank.

Section 4 states that upon selection of a depository for trust funds "it shall be the duty of the County and District Clerks * * * to deposit all Trust Funds in their possession with said depository in the manner hereinafter provided * * *"

Section 4a provides that the Commissioners Court acting through the County Auditor "is authorized to place on time deposit with the depository bank for trust funds * * * that portion of the trust funds account * * * as not required immediately to pay out all amounts in accordance with proper orders of the Judge of the Court in which funds have been deposited * * * The Commissioners Court is authorized and directed to receive all interest so earned on time deposit of such trust funds and to place all such interest into the General Fund of the County as an offset to the expenses of handling such trust funds for the benefit of the litigants."

Section 10 makes the County liable to the owner of the fund in case of the insolvency of the depository.

Section 11 provides that the County or District Clerk having custody by law of any money deposited in court to abide the result of any legal proceedings shall deposit it in the county depository for trust funds. "The funds deposited by the Clerk shall be carried as a Trust Fund account in the name of the Clerk making the deposit * * *"

Section 12 provides no check shall be drawn on the depository for any part of the funds except on an order of the judge of the court in which the funds have been deposited. When a check is drawn by the Clerk it shall show the style and number of the proceeding in which said money was deposited with the Clerk.

Section 4a of Article 2558a, above quoted, is in the form provided in the amendment passed by the 56th Legislature in 1959. Acts 56th Legislature, Chapter 270, pages 286–587. This amendment added to the previously existing section the provision that all interest on funds should be received by the county "as an offset to the expenses of handling such trust funds for the benefit of litigants." The emergency clause stated that the emergency which required the suspension of the rule requiring that bills be read on three several days was "the high cost of handling and accounting for trust funds in the possession of County and District Clerks presently borne by the various counties * * *"

We are of the view that it was the intention of the Legislature by the enactment of the two statutes above set out to provide that all funds, including those belonging to individuals, which were received and held by the Auditor or District Clerk in their respective *official capacities* (emphasis ours unless otherwise indicated) should be placed in the County Depository Bank. When they were so deposited and invested at interest the interest should belong to the County as compensation to it for its expense in handling.

The district court is a court with both legal and equitable powers. Article

V, Section 8, Constitution of Texas. A Bill of Interpleader is essentially an equitable remedy. One of its distinct uses is to enable a party who holds a fund that is claimed by adverse claimants to file suit interpleading such claimants, deposit the fund into the registry of the court and thereupon obtain his discharge and leave it to the court to determine to which claimant it belongs. In such a case, in the protection of the fund, while awaiting determination as to which of the claimants it belongs, the court is exercising its equitable powers. United States v. Morgan, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211. The court is allowed much latitude in handling such deposits. Manhattan Life Insurance Co. v. Stubbs, 234 S.W. 1099 (Tex.Com.App.).

■ To deposit funds in an interpleader suit means that it is placed within the control of the court. Registration of the fact of such deposit is made by the clerk who is the recorder for the court. He is, we think, obligated as clerk to keep and safeguard that which has been deposited. However, the deposit is always subject to the *control and orders of the court*. Article 2290; Texas & P. R. Co. v. Walker, 93 Tex. 611, 57 S.W. 568.

■ We hold that funds deposited *pendente lite* in an interpleader proceeding are under the control of the court, and the court in the exercise of its equitable powers may make such orders it deems necessary to protect said funds.

However, by virtue of Article 2290 the District Clerk is given the duty to care for the funds "subject to the control of the court."

■ Until the court, in the exercise of its equitable powers, enters an order to the contrary, the Clerk holds the fund in his *official capacity*. Articles 1656a and 2558a speak to the investment of funds held by the Clerk *in his official capacity* and the funds so long as they are so held shall be deposited and invested as directed by said

statutes. These statutes are therefore no entrenchment on the constitutional equitable powers of the court.

Under the various orders entered by the court in this case, we are of the view the fund was in the custody of the District Clerk and Auditor in their official capacities.

When the funds were paid into the registry of the court they were in the official custody of the District Clerk. Article 2290. The order of August 7 was a direction to·the Auditor and District Clerk of Harris County. They are referred to by their official titles and none other. They continued to have custody of the fund in their official capacities and were bound to follow the statutes. The court's order of October 7, while it ordered deposit in the Continental Bank, made direction that the deposit be made in the name of "Ray Hardy, District Clerk of Harris County, and his successors· in office." This could but be a continuation of custody of the fund in the District Clerk in his official capacity.

While these orders were in effect the fund was invested in the Harris County depository bank as required by statute since the fund was held in an official capacity.

The order of October 22 made no change in the name or capacity of the custodian but ordered the fund transferred by the Clerk and Auditor to the Continental Bank as the depository bank. Again, we hold custody of the fund remained in the Clerk and Auditor in their official capacities.

The final order, which is the final judgment appealed from, directs that the fund be maintained in The Houston National Bank, the Harris County depository, in a separate account in the name of "Ray Hardy, District Clerk of Harris County, Texas, and his successors in office." The order also fixed the interest at which investment should be made as the highest provided by the contract between Harris

County and its trust fund depository. Here again the effect of the order was to continue custody in the District Clerk in his official capacity.

■ It is true that the various orders assumed to direct that the investment be for the benefit of the claimants. However, the court was without power to make such an order, in the light of the statutes, since the Clerk and/or Auditor at all times were custodians in their respective official capacities.

Appellees contend that Articles 1656a and 2558a are unconstitutional insofar as they provide that the interest earned on the fund was for the benefit of the County. They say that at common law interest was a natural increment to money owned and that these statutes deprive them of their property without compensation and deny them of property without due process of law. They rely on Article I, Sections 17 and 19 and the Fifth Amendment to the United States Constitution as made applicable to the States by the Fourteenth Amendment.

■ We agree that normally any earnings to a fund belong to the owner of the fund as a natural increment thereto. This, however, does not prevent the legislative branch from exercising its legislative authority to provide services and fix a reasonable charge for the services.

■ Article I, Section 17 has been held to be limited to eminent domain proceedings. State v. Steck Co., 236 S.W.2d 866, 869 (Tex.Civ.App.), writ ref.; State ex rel. Pan American Production Co. v. Texas City, 157 Tex. 450, 303 S.W.2d 780, 782.

■ We find no transgression of Article I, Section 19. The legislature through the passage of these articles has extended benefits to the owner of funds. It affords a depository where the funds deposited will be protected by the security furnished the county by the depository bank. The county is made the guarantor of the funds deposited. The greater the deposit the larger the benefits. Also, the county through its officials furnishes bookkeeping and accounting services. The legislature was legislating for all counties of the State. It has broad discretion in the passage of legislation to meet the needs of the people. There are many funds, both large and small, committed to the care of county officers. In keeping and protecting them the counties are put to great expense. In determining what is fair and reasonable for such services the legislature has a broad discretion. A person asserting Constitutional invalidity has an extremely heavy burden. The rule was stated by this court in State ex rel. Pan American Production Co. v. Texas City, 295 S.W.2d 697, aff'd 157 Tex. 450, 303 S.W.2d 780. There we said this:

"The party claiming legislation to be invalid as constituting a deprivation of property without due process carries a heavy burden. He must establish such invalidity 'clearly or beyond a reasonable doubt, and must overcome, by facts judicially known or proved, not only *the evidence sustaining constitutionality,* but *any state of facts which can be reasonably conceived to sustain it.*' (Emphasis added) 16 C.J.S., Constitutional Law, § 99, p. 407. Differently stated, the rule appears to be that constitutional invalidity must appear conclusively, plainly or palpably, and beyond any and all reasonable doubt. There is always a presumption of constitutional validity and it is especially strong in respect to statutes relating to taxation. Nor may that presumption be rebutted on *mere general conclusions* of fact or of law alleged in a petition. See Le Clair v. Swift, D.C. Wis., 76 F.Supp. 729. Courts are not free to declare a statute unconstitutional where there is room for a fair difference of opinion, but only for clear and compelling reasons."

We hold these statutes do not offend Article I, Section 19, Texas Constitution, nor

the Fifth or Fourteenth Amendments to the United States Constitution.

We reverse the trial court and hold that all interest that has been earned belongs to Harris County. All future earnings accruing while the fund is invested by the Auditor and/or the District Clerk while they hold said fund in their official capacities will belong to the County.

We speak only to funds deposited in court pursuant to interpleader where with regard to the protection and custody of the fund the court is authorized to exercise its constitutional equitable power. No other type of funds is involved.

We reverse and remand with instructions that the court enter appropriate orders vesting earned interest in Harris County.