SUPERIOR OIL COMPANY, Appellant,

v.

The CITY OF PORT ARTHUR, Texas et al., Appellee.

No. 8701.

Court of Appeals of Texas, Beaumont.

Dec. 22, 1981.

Rehearing Denied Jan. 14, 1982.

Jesse R. Pierce, Houston, for appellant.

Robert Keith, Thomas H. Walston, Beaumont, George Wikoff, City Atty., Port Arthur, for appellee.

CLAYTON, Justice.

Appellant, Superior Oil Company, filed this suit against the City of Port Arthur, attacking the validity of an annexation ordinance and to enjoin the City from attempting to collect any ad valorem taxes from appellant on its property in question, and in the alternative seeking a declaration that the "discriminatory failure of Defendants to include Plaintiff's property in an industrial district is an unconstitutional denial of the equal protection of the laws" and that "Plaintiff is entitled to have its property taxed on the same basis as property included in industrial districts by the City...." The trial court granted the City's motion for summary judgment, upholding the validity of the questioned annexation ordinance.

The City of Port Arthur, a home rule city, by the process of several sequential annexation ordinances, annexed an area extending three marine leagues into the Gulf of Mexico, encompassing a drilling platform, five oil, gas, and mineral leases (leased from the State) and various other production facilities owned by appellant. The last of such ordinances, Ordinance No. 79–116, adopted December 10, 1979, annexed the territory in which appellant's property is situated. An area of a mile in width and 10½ miles in length, extending into the Gulf of Mexico, has been annexed by seven separate ordinances. The City began its southward expansion and annexation in 1969. Originally, it did so to permit it to buttress levies in order to prevent property damage to city residents from rising water and storms.

In reaching its present boundary lines, the City annexed southward down the Sabine River until it reached the mouth thereof, then proceeded in a southwesterly direction along the Texas coastline, and then out into the Gulf of Mexico to the three marine league line. This was done by separate annexation ordinances, all of which complied with the provisions of the Municipal Annexation act, Tex.Rev.Civ.Stat.Ann. art. 970a (1963). Appellant attacks the validity of the last ordinance No. 79–116.

Appellant, by its fourth, fifth, and sixth points of error complain of the granting of the motion for summary judgment upon the grounds that the annexation ordinance, and the tax assessed against its property, was void "because it constituted a violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States," and that the annexation ordinance is void "because it was done solely for purposes of taxation."

Appellant has grouped these three points under its argument, and we will consider them in the same manner. The sole argument made under the three points is that the Annexation Ordinance No. 79–116 is void because the annexed area, within which appellant's property is located, was annexed solely for taxation purposes, and the City cannot provide any municipal services to the annexed territory. We disagree and, accordingly, overrule these points of error.

The City of Port Arthur enacted the questioned annexation ordinance pursuant to and in full compliance with the provi-

sions of *Article 970a*. Appellant's only complaint is that the annexation and taxation of its property violates the due process clause and the equal protection clause of the Fourteenth Amendment of the United States Constitution. These contentions do not present a justiciable matter under such constitutional amendment, and cannot form a basis for rendering void the annexation of appellant's property.

The United States Supreme Court in *Hunter v. City of Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), held that annexation of territory by political subdivisions of the states does not present a justiciable matter under the Fourteenth Amendment. The Court states (at 178–9, 28 S.Ct. at 46):

"Municipal corporations are political subdivisions of the state.... The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state.... Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it."

Although the *Hunter* decision has been limited in some voting right cases, the Supreme Court has made it clear that the case is still viable today. In *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978), the Supreme Court stated:

"[W]e think that the [*Hunter*] case continues to have substantial constitutional significance in emphasizing the extraordinarily wide latitude that states have in creating various types of political subdivi-

sions and conferring authority upon them."

On numerous occasions, the *Hunter* decision has been applied to municipal annexations. The courts have consistently held that annexations do not present a justiciable matter under the Fourteenth Amendment. In *Hammonds v. City of Corpus Christi*, 226 F.Supp. 456, 458–9 (S.D.Tex. 1964), affirmed, 343 F.2d 162 (5th Cir.), cert. denied, 382 U.S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965), the Court states: "The annexation of lands to a city or town has been held without exception to be purely a political matter, entirely within the power of the Legislature of the State to regulate.... Although we may disagree with the mode of annexation or annexations themselves, the remedy of those aggrieved is not in the courts, but in the State Legislature." See *Detroit Edison Company v. East China Township School Dist. # 3*, 247 F.Supp. 296 (E.D.Mich.1965), affirmed 378 F.2d 225 (6th Cir.), cert. denied, 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 284 (1967); *Deane Hill Country Club, Inc. v. Knoxville*, 379 F.2d 321 (6th Cir.), cert. denied, 389 U.S. 975, 88 S.Ct. 476, 19 L.Ed.2d 467 (1967); *Berry v. Bourne*, 588 F.2d 422 (4th Cir. 1978).

This has also been the holding of the courts of Texas. See *Winship v. City of Corpus Christi*, 373 S.W.2d 844 (Tex.Civ. App.—Corpus Christi 1963, writ ref'd n.r.e.), dism'd w.o.j. and cert. denied, 379 U.S. 646, 85 S.Ct. 612, 13 L.Ed.2d 551 (1965); *Carter v. Hamlin Hospital District*, 538 S.W.2d 671 (Tex.Civ.App.—Eastland 1976, writ ref'd n.r.e.), cert. denied, 430 U.S. 984, 97 S.Ct. 1680, 52 L.Ed.2d 378 (1977); *City of Pasadena v. Houston Endowment, Inc.*, 438 S.W.2d 152, 156 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.); *City of Wichita Falls v. State ex rel. Vogtsberger*, 533 S.W.2d 927 (Tex.1976). In *State ex rel. Pan American Production Co. v. Texas City*, 157 Tex. 450, 303 S.W.2d 780, 782 (1957), appeal dism'd per curiam, 355 U.S. 603, 78 S.Ct. 533, 2 L.Ed.2d 523 (1958), our Supreme Court states:

"[T]he conclusion of petitioners here that the annexation ordinance was unreason-

able and arbitrary is only to say that it was unreasonable and arbitrary because the land was not suitable, and had no relation to the City's needs, and it was for the purpose only of acquiring additional revenue and could afford no benefit to the owners of the property annexed. The decisions of this State have repeatedly held that such facts do not warrant intervention or review by the courts."

Appellant's attack upon the validity of the annexation ordinance in the case at bar for the reason that the annexation was for the sole purpose of raising revenue and not offering municipal services has been rejected in numerous cases. Texas courts have consistently held that they will not look to the purposes of an annexation to determine its validity. Assuming appellant established that its property was within an area annexed by the City solely for purposes of raising additional revenue, we find such fact would not render the annexation ordinance void. In *City of Wichita Falls v. State ex rel. Vogtsberger*, supra at 929, our Supreme Court states: "Traditionally, the courts of this State have not scrutinized the purpose of annexation ordinances or the use or character of the occupation of the annexed territory." See also, *Carter v. Hamlin Hospital District*, supra; *State ex rel. Pan American Production Co. v. Texas City*, supra; *Norris v. City of Waco*, 57 Tex. 635 (1882).

Appellant relies on *Myles Salt Co. v. Board of Commissioners*, 239 U.S. 478, 36 S.Ct. 204, 60 L.Ed. 392 (1916). However, our Texas Supreme Court in *State ex rel. Pan American Production Co. v. Texas City*, supra at 783, distinguished the *Myles* case by stating:

"A valid distinction is to be made, however, between a special tax or assessment to finance special improvements designed to benefit property or persons located within the particular taxing district, and on the other hand an ad valorem tax on all property within the taxing jurisdiction of the general welfare of the entire community.... [I]t is constitutionally sufficient if taxes are uniform and are for public purposes in which the City has an interest. [*Morton Salt Co. v. City of South Hutchinson*, 177 F.2d 889 (10th Cir. 1949)].

 Based upon the foregoing authorities, we hold the City's Ordinance No. 79–116 is not void, and we follow the long established rule that the determination of the boundaries of a municipality, as to the grounds of attack made by appellant in the case at bar, is ordinarily a political function, entirely within the power of the legislature of this State to regulate, and the remedy of those aggrieved is not in seeking relief in the courts, but in the State Legislature. Furthermore, the mere fact that the annexation was for taxation and revenue raising purposes and that no municipal services were provided does not render the annexation ordinance void.

Our State Legislature has provided a remedy for those within annexed territory where municipal services have not been furnished. *Tex.Rev.Civ.Stat.Ann. art. 970a, § 10* (1963), provides for the method of disannexation of such territory. See *Spencer v. City of Brownsville*, 458 S.W.2d 504 (Tex.Civ.App.—San Antonio 1970, no writ).

We note that the legislature has amended *Article 970a, §§ 6* and *10*, effective August 31, 1981, 1981 Tex.Sess.Law Serv., Ch. 842, at 3207 (Vernon), H.B. 1952. This amendment concerns municipal services and disannexation. The amendment became effective subsequent to the enactment of the ordinance involved herein, and we are not called upon to express an opinion thereon.

Appellant, by its seventh and eighth points of error, complains of the summary judgment for the reason that "[City's] system of granting industrial contracts denied Plaintiff equal protection of law in violation of the Fourteenth Amendment of the Constitution of the United States" and that it has "standing to challenge [City's] system of granting Industrial District Contracts."

Appellant in its brief states that prior to the annexation by Ordinance No. 79–116, its "property lay within the extraterritorial jurisdiction of the City; it was therefore subject to being included in an industrial

district contract under Art. 970a [Sec. 5]. Plaintiff's constitutional right to equal treatment under law was violated by Defendant's decision to annex the property rather than offer an industrial district contract to plaintiff." Appellant, in its brief, states that it is not attacking the constitutionality of *Article 970a, § 5*, nor is it attacking the existing industrial contracts between the City and other companies. Appellant argues that its constitutional right to equal treatment under law was violated by the City's decision to annex its property rather than offer an industrial contract. Appellant further states in its brief that "Plaintiff does not allege that it was discriminated against by having its application [for industrial contract] refused when others were granted."

The City, pursuant to *Article 970a, § 5* (1963), is granted:

"[T]he permissive right and power to enter into contracts or agreements with the owner or owners of land in such industrial district to guarantee the continuation of the extraterritorial status of such district, and its immunity from annexation by the City for a period of time not to exceed seven (7) years, and upon such other terms and considerations as the parties might deem appropriate...."

■ The summary judgment proof shows that there were in existence, at the time of trial, twelve industrial district contracts as authorized by *Article 970a, § 5*. Only one industrial company has been rejected by the City for such a contract and that was for the reason that the company was in a congested area. Such proof does not show any efforts on the part of the City to discriminate against any particular industry for an industrial district contract. Appellant admits it was never refused any such contract by the City.

■ Appellant's complaint and argument that the City acted arbitrarily and unreasonably and discriminated against it by annexing its property rather than attempting to enter an industrial district contract covering its property is rejected. The City had the authority and power to annex the area in which appellant's property was located, as well as having the power to create such an industrial district. Appellant has offered no reason for prohibiting the City from exercising either powers, or both, or neither. We have held that the annexation power was legally exercised, and appellant admits the City has the right to create the industrial districts and enter into contracts with industry located within such districts. We find no merit to any complaint or argument made by appellant under these points. Moreover, appellant has never, at any time, been refused any industrial contract by the City. By reason thereof, it is not now in a position to complain, and has no standing to now challenge the failure of the City to enter into an industrial district contract with it. See *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Jackson v. Dukakis*, 526 F.2d 64 (1st Cir. 1975).

Finding no error, we affirm the judgment of the trial court.

AFFIRMED.

KEITH, Justice, concurring.

I join, without reservation, in the scholarly and well-reasoned opinion affirming the judgment of the trial court. I file this concurring opinion to assert the existence of another ground of affirmance.

The summary judgment record in this case shows without contradiction that Port Arthur Ordinance No. 79–116 was involved in a quo warranto proceeding in Cause No. A–110319 upon the docket of the District Court of Jefferson County, Texas, entitled "The State of Texas, ex rel. The Superior Oil Company vs. City of Port Arthur, Texas." [1]

On February 26, 1980, a judgment was entered in the consolidated cause upholding the validity of Port Arthur Ordinance No.

---

1. This cause was consolidated for trial with another cause pending in said court bearing No. A–110231, styled "The State of Texas, ex rel., Bob Armstrong, Commissioner of The General Land Office vs. City of Port Arthur, Texas."

79–116 challenged by Superior Oil in this proceeding. The judgment in the original quo warranto suit was final before the instant proceeding was filed.[2] Superior Oil Company, having participated in the prior quo warranto proceedings, is bound by the judgment entered therein. *Williams v. White*, 223 S.W.2d 278, 283 (Tex.Civ.App.—San Antonio 1949, writ ref'd). See also, *Cochran County v. Boyd*, 26 S.W.2d 364, 365 (Tex.Civ.App.—Amarillo 1930, writ ref'd); *Allied Van Lines v. Central Forwarding, Inc.*, 535 S.W.2d 412, 415–416 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.).

I join in the affirmation of the trial court's judgment denying any relief to the appellant.

---

2. The State of Texas and Superior Oil Company attempted to appeal from the judgment entered in the District Court in the quo warranto proceedings but failed to file the transcript within the prescribed time. Our Clerk refused to file the record and, upon motion by the appellants in that cause, we refused to order the Clerk to file the record and the trial court's judgment became final. These proceedings are in our record under No. 8566, "The State of Texas, ex rel. Bob Armstrong, Commissioner of The General Land Office, et al v. City of Port Arthur, Texas."

The summary judgment record establishes the finality of the quo warranto judgment. Moreover, we are authorized and do take notice of our own records in a case involving the same subject matter between the same parties. *Cochran County v. Boyd*, 26 S.W.2d 364, 365 (Tex.Civ.App.—Amarillo 1930, writ ref'd).