ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

December 18, 2009

The Honorable Mark Homer
Chair, Committee on Culture, Recreation
    and Tourism
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0750

Re: Authority of a city to reacquire extraterritorial jurisdiction that it previously relinquished pursuant to chapter 42 of the Local Government Code (RQ-0798-GA)

Dear Representative Homer:

The Legislature has granted cities extraterritorial jurisdiction over designated amounts of unincorporated area contiguous to the city's corporate boundaries. TEX. LOC. GOV'T CODE ANN. §§ 42.001, .021 (Vernon 2008). You generally ask "whether [a city] can . . . re-acquire extraterritorial jurisdiction that it previously released by amending or superseding a previous boundary agreement."[1] Your inquiry relates specifically to a dispute regarding the purported release and reacquisition of property in the extraterritorial jurisdiction ("ETJ") of the Town of Prosper ("Prosper"). *See* Request Letter at 1–2.

You inform us that in 2002, Prosper and the City of Celina ("Celina") entered into an ultimate boundary line agreement (the "Agreement") regarding their future common boundary lines. *See id.* at 1. Pursuant to the Agreement, you explain, Prosper "released" territory that was within its ETJ but beyond the ultimate boundary line as defined in the Agreement.[2] *Id.* at 1. At issue here is a tract of land (the "Property") within the released ETJ territory, but not within the ETJ of Celina or any other city. *Id.* In 2009, you tell us, Prosper and Celina entered into a consent agreement (the

---

[1]Request Letter at 1 (*available at* http://www.texasattorneygeneral.gov).

[2] Prosper factually disputes that the property at issue was released. *See* Brief from Claire E. Swann, Abernathy Roeder Boyd & Joplin P.C., on behalf of Prosper at 2 (Aug. 5, 2009) [hereinafter Prosper Brief]. Prosper asserts that: "[T]he . . . Agreement only addresses Prosper's and Celina's ultimate boundary and ETJ for that portion of the two cities located in Collin County. It did not even address the boundary or ETJ for Denton County, where the Property is located." *Id.* Prosper contends that "[b]oth parties mistakenly believed that Prosper had waived its ETJ (where the Property was located) under the . . . Agreement," and the "Consent Agreement was, therefore, meant to clarify that the Property remained in Prosper's ETJ." *Id.* A brief filed on behalf of Mike A. Myers Investment Holdings, L.P.("Myers"), owner of the property at issue, refutes Prosper's assertions. See Brief from Arthur Val Perkins, Coats Rose, P.C., on behalf of Myers at 1–2 (Oct. 12, 2009). The brief contends that Prosper released the property pursuant to a 1987 boundary adjustment agreement with Celina; and the Consent Agreement confirms that understanding with the purpose "stated explicitly" to "undo the release." *Id.* at 1–2.

"Consent Agreement"),[3] pursuant to which (1) Prosper purported to reclaim the portion of its previously released ETJ containing the Property; (2) as a result, the Property is again included within Prosper's ETJ; but (3) only until such time as Celina's ETJ expands to the Property. *Id.* at 1–2. At that time, Prosper will again release the Property so that it is within Celina's ETJ. *Id.* at 2.

In light of these circumstances, the first part of your question is whether it is "permissible for a city to acquire extraterritorial jurisdiction in a manner different [from] the prescribed methods listed in Chapter 42 of the Local Government Code." *Id.* at 1. A city must generally comply with the requirements of chapter 42 when acquiring ETJ. Under that chapter, a city may expand its ETJ by an increase in its inhabitants, voluntary petition of a contiguous landowner, or extension of the city's boundary through annexation. *See* TEX. LOC. GOV'T CODE ANN. §§ 42.021, .022(a)–(c) (Vernon 2008); *cf. City of Alton v. City of Mission*, 164 S.W.3d 861, 868 (Tex. App.—Corpus Christi 2005, pet. denied) (explaining that the Legislature "allows for receipt of released ETJ only by annexation, population growth, or request" (citing section 42.022 of the Local Government Code)).

However, a determination as to whether the city complied with relevant law in this instance would require the application of the law to a set of disputed facts. Those disputed facts include whether or not Prosper released the Property from its ETJ. *See supra* note 2. This office cannot, in an attorney general opinion, investigate and resolve disputed questions of fact or mixed questions of law and fact. Tex. Att'y Gen. Op. No. GA-0648 (2008) at 7.

The second part of your question is whether a city may "hold a particular tract of land within its extraterritorial jurisdiction solely for the purpose of relinquishing it to another city once its jurisdiction lawfully extends to the tract." Request Letter at 2. Your question suggests that this is an improper purpose or inconsistent with chapter 42. *See id.* (citing to section 42.001 of the Local Government Code); *see also* TEX. LOC. GOV'T CODE ANN. § 42.001 (Vernon 2008) (declaring that it is "the policy of the state" to designate certain areas as the ETJs of municipalities "to promote and protect the general health, safety, and welfare of persons residing in and adjacent to the municipalities"). We cannot resolve your question in an attorney general opinion.

First, as a matter of general law, Texas courts do not look at a city's motive to determine the validity of the city's legislative acts: "The determination of boundaries is a question for the political branches of government rather than judicial. Consequently, the court may not substitute its judgment for that of the municipality." *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436 n.3 (Tex. 1991) (considering a challenge to annexation proceedings based on the purpose of the annexation (citing *City of Wichita Falls v. State ex rel. Vostsberger*, 533 S.W.2d 927, 929 (Tex.), *cert. denied*, 429 U.S. 908 (1976))); *see also Superior Oil Co. v. City of Port Arthur*, 628 S.W.2d 94, 97 (Tex. App.—Beaumont 1981, writ ref'd n.r.e.) ("Texas courts have consistently held that they will not look to the purposes of an annexation to determine its validity."), *appeal dism'd*, 459 U.S. 802 (1982).

---

[3]*See* Consent Agreement between Town of Prosper and City of Celina (Apr. 14, 2009) (attachment to Request Letter).

Second, in this particular instance, the resolution of the issue raised by your question involves unresolved issues of fact.  As a threshold matter, Prosper disputes that it is holding the Property for the benefit of Celina.[4]  Moreover, section 42.001, to the extent applicable here, by its plain language implicates a question of fact or a mixed question of fact and law:  Whether the acquisition or holding of the Property does or does not relate to the protection of the health, safety, and welfare of persons residing in and adjacent to the two cities.  *See* TEX. LOC. GOV'T CODE ANN. § 42.001 (Vernon 2008) (designating ETJs "to promote and protect the . . . welfare of persons residing in and adjacent to the municipalities").  Again, this office cannot investigate and resolve disputed questions of fact or mixed questions of law and fact in an attorney general opinion.  Tex. Att'y Gen. Op. No. GA-0648 (2008) at 7.

---

[4]Prosper contends that it

> is committed to making certain that development in its ETJ occur[s] in an orderly fashion.  A perfect example of Prosper's public purpose for holding its ETJ is that Prosper would want to have a voice in the creation of a [municipal utility district].  Prosper's desire to object to the creation of the MUD is evidence that Prosper is not merely "holding land solely for the purpose of giving it to Celina in the future."  Instead, Prosper is holding its ETJ to better protect its citizens and the current and future residents living in the ETJ.

Prosper Brief at 4.

## S U M M A R Y

While a city must generally comply with the requirements of chapter 42 of the Local Government Code when acquiring extraterritorial jurisdiction ("ETJ"), a determination as to whether a city complied with relevant law in the situation about which you inquire would require the application of law to a set of disputed facts. This office cannot, in an attorney general opinion, investigate and resolve disputed questions of fact or mixed questions of law and fact.

Further, this office cannot determine in an attorney general opinion, under the circumstances of your request, whether a city may validly hold ETJ property for the purpose of relinquishing it to another city once its jurisdiction lawfully extends to the tract. First, as a matter of general law, Texas courts do not look at a city's motive to determine the validity of the city's legislative acts. Second, in the particular instance about which you inquire, the resolution of the legal issues raised involve unresolved factual issues.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee