378 F.2d 225
 The DETROIT EDISON COMPANY, Ralph Wertz and Herbert Knack, Plaintiffs-Appellants,
v.
EAST CHINA TOWNSHIP SCHOOL DISTRICT NO. 3, Donald MacDonald, Leland Sass, Mary Phillips, Milton J. Gearing, Edwin H. Lindow, Malcolm G. Simons and William Hopson, Individually and as Members of the Board of Education of said School District, Defendants-Appellees.
 No. 17004.
 United States Court of Appeals Sixth Circuit.
 June 2, 1967.
 
 Prentiss M. Brown, St. Ignace, Mich., and Richard Ford, Detroit, Mich., for appellants, Fischer, Sprague, Franklin & Ford, Harvey A. Fischer, Richard Ford, Detroit, Mich., on the brief.
 Kenneth J. Stommel, Port Huron, Mich., for appellees, Miller, Canfield, Paddock & Stone, John H. Nunneley, Stratton S. Brown, Gilbert E. Gove, Detroit, Mich., Walsh, O'Sullivan, Stommel & Sharp, Norman D. Beauchamp, Port Huron, Mich., on the brief.
 Before PHILLIPS and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.
 JOHN W. PECK, Circuit Judge.
 
 
 1
 Plaintiffs-appellants sought a declaration pursuant to 28 U.S.C. § 2201 that the annexation of two larger school districts to the school district in which they owned property violated the Fourteenth Amendment of the federal constitution, and that the assumption of the bonded indebtedness of the two annexed school districts by the combined district violated both the federal constitution and state law.
 
 
 2
 At all times relevant hereto, plaintiffs owned property within East China Township School District No. 3 (hereinafter "East China"), in St. Clair County, Michigan. Prior to 1960, East China embraced an area of 12 square miles, had 900 electors, a relatively small outstanding bonded indebtedness and a total property assessment for taxation purposes of approximately $82 million, the overwhelming proportion of which could be attributed to the power plant of Detroit Edison Company. Adjacent to East China was Marine City Community School District No. 7 (hereinafter "Marine City"), which embraced an area of 51 square miles, had 3800 electors, a relatively high outstanding bonded indebtedness and a total property assessment for taxation purposes of approximately $19.5 million. Also adjacent to East China was the School District of the City of St. Clair (hereinafter "St. Clair") which embraced an area of 27 square miles, had 4538 electors, a relatively high outstanding bonded indebtedness and a total property assessment of approximately $18.7 million.
 
 
 3
 In 1961, East China annexed both Marine City and St. Clair, the combined district thereafter being operated as a single, integrated unit. The annexations were made pursuant to the Michigan School Code (C.L.S.1961 § 340.1 et seq. (Michigan Statutes Annotated § 15.3001 et seq.)) which in pertinent part provided for school district annexations upon the approval of the State Superintendent of Public Instruction, the affirmative vote of the school electors in the annexed district and the affirmative vote of the board of education of the annexing district. The Michigan Supreme Court, in Detroit Edison Co. v. East China Tp. School District, 366 Mich. 638, 115 N.W. 2d 298 (1962), upheld the validity of the annexations in question as against plaintiff Detroit Edison's contention that the joinder of the districts should have been accomplished pursuant to the statutory consolidation provisions which would have required an affirmative vote by the electors in both the annexing and annexed districts. The issues presented in the instant case were not raised in the state proceeding.
 
 
 4
 Subsequent to the annexations, the electors of the combined district voted to assume the high school bonded indebtedness of the former Marine City and St. Clair districts. The complaint alleges that the electors of original East China rejected the debt assumption proposal although it was approved by a majority of the voters of the combined district. Thus, with respect to the $2.8 million bonded liability, over 60 per cent was allegedly shifted to East China, a large portion of which fell on plaintiff-appellant Detroit Edison Co.
 
 
 5
 The plaintiffs in this case consist both of individual property owners of the original East China district (who had the statutory right to vote directly on the debt assumption proposals) and Detroit Edison, a New York corporation which obviously and admittedly did not have any voting right.
 
 
 6
 The complaint alleges that the statute which permitted the annexation and debt assumption proceedings is violative of the due process and equal protection clauses of the Fourteenth Amendment of the federal constitution because the individual plaintiffs were denied the right to vote on the annexation proposal and their voting power was debased and diluted since they were compelled to vote in common with other adversely interested electors on the debt assumption issue. Thus, say plaintiffs, they have been discriminated against and have had their voting franchise abridged as compared with that of electors in adjacent districts. The complaint also alleges that the statute as applied to all East China property owners, including the corporate plaintiff, violates the above mentioned provisions of the Fourteenth Amendment since their property has been subjected to liens for the payment of the debts of others. Plaintiffs further contend that the tax burden imposed as a result of the debt assumption is so disproportionate to the benefits received as to amount to confiscation. Finally, plaintiffs contend that the debt assumption is invalid because the proceedings did not conform to state law. The specific relief requested was a declaration that the combined district had not assumed the bonded indebtedness of Marine City and St. Clair, that plaintiffs' property within the former East China district cannot be reached for the payment of such indebtedness, and that there has been no lawful annexation.
 
 
 7
 Upon defendants' motion for summary judgment, based on the grounds that the court had no jurisdiction of the subject matter and that plaintiffs failed to state a claim upon which relief could be granted, the District Court dismissed the complaint, stating that "[T]he acts of which plaintiffs complain do not abridge any substantive rights secured to them by the federal constitution. The individual plaintiffs' suits do not meet the jurisdictional amount requirement in 28 U.S.C. § 1331(a) and are not within the scope of 28 U.S.C. § 1343(3); and even if the plaintiffs have a valid constitutional claim, this suit comes within the abstention doctrine."
 
 
 8
 This action allegedly arising under the Constitution, jurisdiction was based in part upon 28 U.S.C. § 1331, federal question jurisdiction. The District Court held that neither of the individual plaintiffs averred the requisite $10,000 jurisdictional amount, since the actual tax or assessment rather than the value of the property affected by the tax (as claimed by plaintiffs) was determinative of this issue. On appeal, dismissal of the complaint on this ground is not challenged.
 
 
 9
 Jurisdiction was also predicated upon section 1343(3)[1] of Title 28, U.S.C., as the suit was based upon the Civil Rights Acts, 42 U.S.C.A. § 1971 et seq.[2] The District Court held that this suit involving "essentially property claims" was not within the scope of section 1343(3) since the major purpose of Civil Rights jurisdiction is to redress the deprivation of constitutional rights which are incapable of pecuniary valuation. While the limitation suggested is derived from Justice Stone's concurring opinion in Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), it is unnecessary for a final disposition of this case that the District Court's ruling on this issue be affirmed, it being merely observed that many courts, including this one, have taken what has been termed a "latitudinarian view." Joe Louis Milk Co. v. Hershey, 243 F.Supp. 351, 354 (N.D.Ill.1965). See Glicker v. Michigan Liquor Control Comm., 160 F.2d 96 (6th Cir. 1947); Lewis v. City of Grand Rapids, 356 F.2d 276 (6 Cir. 1966), cert. denied, 385 U.S. 838, 87 S.Ct. 84, 17 L. Ed.2d 71 (1966); Burt v. City of New York, 156 F.2d 791 (2d Cir. 1946); Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953); McGuire v. Sadler, 337 F. 2d 902 (5th Cir. 1964).
 
 
 10
 The District Court, relying principally on Hunter v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907) for the proposition that "[a]ny alteration of municipal boundaries is a matter within the complete discretion of the state and not confined by any rights secured by the federal constitution," held that the annexation procedure followed was a legislative matter not justiciable under the due process or equal protection clauses of the Fourteenth Amendment.
 
 
 11
 In Hunter, the City of Allegheny was consolidated with the City of Pittsburgh pursuant to an act of the State General Assembly. Consolidation was permitted by the act upon an affirmative vote of a majority of the voters within both municipal corporations. Although a majority of Allegheny voters opposed the consolidation and voted against it, the proposal passed, whereupon suit was commenced in the state courts. On appeal, the Supreme Court summarized the assignment of error pertinent here as follows (p. 177, 28 S.Ct. p. 46):
 
 
 12
 "Briefly stated, the assertion in the fourth assignment of error is that the Act of Assembly deprives the plaintiffs in error of their property without due process of law, by subjecting it to the burden of the additional taxation which would result from the consolidation. The manner in which the right of due process has been violated * * * is that the method of voting on the consolidation prescribed in the act has permitted the voters of the larger city to overpower the voters of the smaller city, and compel the union without their consent and against their protest."
 
 
 13
 The following established principles were dispositive of this contention (p. 178-179, 28 S.Ct. p. 46):
 
 
 14
 "Municipal corporations are political subdivision of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. * * * The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers * * *."
 
 
 15
 Two other Circuits, the Fifth and Tenth, have had occasion to pass on cases where the constitutionality of a state annexation procedure was raised. As the District Court noted, both Courts of Appeals relied on Hunter v. City of Pittsburgh in affirming dismissals of their respective cases. In Hammonds v. City of Corpus Christi, 343 F.2d 162 (5th Cir.), cert. denied, 382 U.S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965), the court found no error in the District Court's decision which dismissed the complaint on the ground, among others, that "the annexation of lands to a city has been held without exception to be purely a political matter, entirely within the power of the State Legislature to regulate". And in International Harvester Co. v. Kansas City, 308 F.2d 35 (10th Cir. 1962), cert. denied, 371 U.S. 948, 83 S.Ct. 503, 9 L.Ed.2d 498 (1963) after quoting from Hunter, stated:
 
 
 16
 "Neither the due process clause nor the concept of equal protection is available to persons seeking to obstruct the ordinary and necessary exercise of a state's political functions. * * *"
 
 
 17
 With respect to the annexation issue, plaintiffs' reliance on the relatively recent apportionment cases is misplaced. The Court in Reynolds v. Sims, 377 U.S. 533, 554, 84 S.Ct. 1362, 1378, 12 L.Ed. 2d 506 (1954), for example, recognized that "all qualified voters have a constitutionally protected right to vote" (referring of course to the right to vote for a "candidate of one's choice" in a "representative government" system), and thus the Court, relying on the equal protection concept, limited the states' power to disregard population in defining political boundaries for election purposes. However, as the District Court noted, the reapportionment cases "create no constitutional rights in affected citizens concerning the procedure for creating or altering" any type of state district. The judgment of the District Court with respect to the annexation issue will hereinafter be affirmed; reference is made to the well reasoned opinion of District Judge Theodore Levin reported at 247 F.Supp. 296, wherein the cases of Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960) and Carrington v. Rash, 380 U.S. 89, 85 S. Ct. 775, 13 L.Ed.2d 675 (1965) are shown to be inapposite.
 
 
 18
 With respect to the constitutional issues concerning the debt assumption proceedings (i. e., that the procedures employed pursuant to state statute were violative of the due process and equal protection clauses of the Fourteenth Amendment, and that the tax imposed as a result thereof was so disproportionate to the benefits received as to amount to confiscation), the District Court's determination based on application of the abstention doctrine will be affirmed, although that court's conclusions on both these issues on the merits is also deemed correct.
 
 
 19
 Federal courts generally abstain from exercising jurisdiction in order to avoid conflict with the administration by a state of its own affairs. See 1 Barron & Holtzoff, Federal Practice and Procedure § 64 (Wright ed. 1960). This policy is codified by the Johnson Act, 28 U.S.C. § 1341, in the area of state taxation:
 
 
 20
 "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."
 
 
 21
 In Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), plaintiffs sought a declaratory judgment regarding the constitutionality of a state tax. The Court reiterated the principle that "scrupulous regard for the rightful independence of state governments * * * should at all times actuate the federal courts," the guideline being the reluctance to interfere with a state's "fiscal operations" or with "state internal economy and administration." Id. at 298, 63 S.Ct. at 1073. Although the relief sought in that case was, as here, noncoercive in nature, the Court, after noting the Johnson Act, stated that "those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure." Id. at 299, 63 S.Ct. at 1073.
 
 
 22
 The above principles are applicable here. The issues raised by the debt assumption proceeding would, if decided in favor of plaintiffs, result directly or indirectly in avoidance of the state tax which was levied as a result of said debt assumption. Indeed, abstention is particularly appropriate in this case since the assumption proceeding allegedly failed to conform to state law and since certain sections of the school code pursuant to which the proceedings were conducted allegedly contravened the state constitution. The federal constitutional claims may well be avoided altogether should resolution of the local law issues be dispositive of the case.
 
 
 23
 A state must, as a prerequisite to application of the abstention doctrine, provide a "plain, speedy and efficient" remedy for the claim asserted. The District Court's conclusion that Michigan does provide such a remedy to attack improper taxation is sound. Compiled Laws (1948) § 211.53 (Mich.Stat.Ann. § 7.97) permits a party to pay a state tax or assessment under protest, stating the reason therefore in writing, and then bring a suit for recovery within thirty days.
 
 
 24
 One further matter deserves mention at this point. Where, as here, a District Court determination of a constitutional issue is grounded on alternative holdings, one reaching the merits and the other sustaining abstention, it is susceptible of criticism. Because a District Court need not (indeed should not) reach the merits where abstention is proper, Great Lakes Dredge & Dock Co. v. Huffman, supra at 301-302, 63 S.Ct. 1070, a decision based on such alternative holdings needlessly decides a constitutional issue. Such a decision is in the nature of an advisory opinion, the rendering of which should in the exercise of judicial restraint be avoided where possible. Confusion may be created by such holdings which may not clearly indicate whether the decision is on the merits or whether the case has been referred to the state court for its decision on the merits. The breadth of the District Court's decision may be subject to scrutiny in the state courts in the form of the defense of res judicata.
 
 
 25
 The judgment of the District Court with respect to the annexation issue is affirmed because plaintiffs have failed to state a claim upon which relief may be granted; and affirmed with respect to the debt assumption issues under an application of the abstention doctrine.
 
 
 
 Notes:
 
 
 [1]
 § 1343. CIVIL RIGHTS AND ELECTIVE FRANCHISE
 "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * * (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"
 
 
 [2]
 In the District Court, plaintiffs did not specify the provision or provisions of the various Civil Rights Acts upon which they relied, citing only "sections 1971 to 1995 of Title 42," U.S.C.A. In the briefs filed with this court, plaintiffs cite no cases in support of their position and only the jurisdictional section (§ 1343(3)) is referred to. Clearly, many of the sections included in the reference to §§ 1971-1995 inclusive of 42 U.S. C.A. are inapplicable in this case. Plaintiffs appear to rely on the allegations charging a conspiracy by defendants for the purpose of denying plaintiffs of the equal protection of the laws. However, section 1985(3), 42 U.S.C.A., which affords a remedy for those injured by such a conspiracy, only provides for the maintenance of an action at law for damages. See McShane v. Moldovan, 172 F.2d 1016, 1018 (6th Cir. 1949)