The SUPERIOR OIL COMPANY

v.

The CITY OF PORT ARTHUR, TEXAS.

Civ. A. No. B–80–459–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 22, 1982.

---

**19.** See *Guyer v. Cities Service Co.*, 381 F.Supp. 7 (E.D.Wisc.1974).

Thomas H. Lee, Foreman & Dyess, Jesse R. Pierce, Porter & Clements, Houston, Tex., for plaintiff.

George Wikoff, City Atty., George Piazza, Asst. City Atty., City of Port Arthur, Port Arthur, Tex., Robert Q. Keith, Thomas H. Walston, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for defendant.

## AMENDED MEMORANDUM OPINION

ROBERT M. PARKER, District Judge.

On February 17, 1982, this Court entered an Opinion and Order staying this cause until the termination of a parallel proceeding between the same parties in the state courts of Texas. *Superior Oil Co. v. City of Port Arthur,* 535 F.Supp. 916 (E.D.Tex. 1982). Although the Court indicated that it was prepared to find that Port Arthur's annexation of Superior Oil's offshore drilling platform and leasehold constituted a taking of property without due process of law in violation of the fourteenth amendment, the Court was of the opinion that the federal doctrine of res judicata would preclude the Court from making such a finding. Rather than dismiss the claim as barred, however, the Court stayed proceedings pending final resolution of the state proceeding, reserving the question of whether a departure from the rigid application of res judicata might be necessary to further an overriding public policy or avoid a manifest injustice. *Id.* at 921; *see Shimman v. Frank,* 625 F.2d 80, 89 (6th Cir. 1980); *Garner v. Giarrusso,* 571 F.2d 1330, 1336 (5th Cir.1978). The Court requested further briefing on this issue and on any other issues pertaining to res judicata that the parties considered appropriate.

On May 12, 1982, the Texas Supreme Court refused Superior Oil's application for writ of error, on the basis that there was no reversible error in the court of civil appeals' decision of December 22, 1981. *Superior Oil Co. v. City of Port Arthur,* 628 S.W.2d 94 (Tex.Civ.App.—Beaumont 1981, writ ref'd

n.r.e.). This has brought the state court proceedings to a close.

The United States Supreme Court has recently held that the res judicata doctrine is not overridden by "public policy" or "manifest injustice" considerations,[1] thereby foreclosing flexibility in its application to this cause. Upon further consideration, however, of the subsequent briefing on the res judicata question in this suit and careful examination of the final opinion issued by the Texas court on this controversy, this Court is now persuaded that res judicata is not technically applicable under either state or federal doctrine.[1(a)] Texas' resolution of this conflict does not bar an adjudication in this federal forum; this Court reaches the merits and finds that Port Arthur's annexation of Superior Oil's leasehold is a taking of property without due process of law.

## I. RES JUDICATA

The requirements for one adjudication to bar another under the federal doctrine of res judicata as it is applied in this circuit are clearly and succinctly stated in *Stevenson v. International Paper Co.,* 516 F.2d 103 (5th Cir.1975):

For a prior judgment to bar a subsequent action, it is firmly established (1) that the prior judgment must have been rendered by a court of competent jurisdiction; (2) that there must have been a final judgment on the merits; (3) that the parties, or those in privity with them, must be identical in both suits; and (4) that the same cause of action must be involved in both suits. If these elements are established, then the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit, not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented.

*Id.* at 108–109 (citations omitted).

Texas' approach is strikingly similar.[2]

Only the second requirement, the existence of a final judgment on the merits in the state court has ever been in serious dispute in this cause. In this Court's February 17 Order the focus of the examination was on the finality of the state court

---

**1.** *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981); *see Howell v. State Bar of Texas,* 674 F.2d 1027, 1031 n. 9 (5th Cir.1982).

**1(a).** In the February 17 Order, the Court considered the applicability of Texas res judicata principles to this cause under 28 U.S.C. § 1738. It was determined then that res judicata would not attach under Texas law because an appeal was pending in the state court suit. *See* n. 3 *infra* and accompanying text. Appeal to the United States Supreme Court is currently pending and, therefore, res judicata under Texas law is still not applicable. *Folsom Investment Co., Inc. v. Moore,* 681 F.2d 1032 (5th Cir.1982) indicates that an examination into the federal doctrine may be unnecessary, citing *Kremer v. Chemical Construction Corp.,* —— U.S. ——, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). "*Kremer* apparently dooms the assumption of many courts and commentators that federal courts may be free to grant greater preclusive effect to state court judgments than would the courts of the judgment-rendering state." 681 F.2d at 1035. Because of lingering questions over the applicability of federal res judicata principles to give a state court judgment preclusive effect in a federal court, this Court will examine the federal doctrine as well.

**2.** A recent Texas Supreme Court cites the United States Supreme Court for the traditional res judicata rule in formulating the Texas doctrine:

[A] question of fact or of law, distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery or defense in a suit or action between parties sui juris, is conclusively settled by the final judgment or decree therein, so that it cannot be further litigated in a subsequent suit between the same parties or their privies, whether the second suit be for the same or a different cause of action.

*Hammonds v. Holmes,* 559 S.W.2d 345, 346 (Tex.1977), quoting *State of Oklahoma v. State of Texas,* 256 U.S. 70, 86, 41 S.Ct. 420, 422, 65 L.Ed. 831 (1920); *see also, e.g., Abbott Laboratories v. Gravis,* 470 S.W.2d 639, 642 (Tex. 1971) ("[A]n existing final judgment rendered upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties in all other actions on the points at issue and adjudicated in the first suit."); *City of Corpus Christi v. Nueces County Water Control and Imp. Dist. No. 3,* 540 S.W.2d 357 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *Ellison v. McGlaun,* 482 S.W.2d 304 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.).

judgment.[3] While it was argued that the state district court may not have ruled "on the merits" of the constitutional challenge, no one disputed that the court of civil appeals' opinion addressed the merits of the claim. Because a stay on another basis was entered pending application for writ of error to the Texas Supreme Court, detailed inquiry into whether the lower court opinion was on the merits would have been premature. Now that the Texas Supreme Court has refused to issue a writ of error, the opinion of the court of civil appeals has become the final determination in the state proceeding. It is clear that this is the opinion which must be examined to determine if the doctrine of res judicata is applicable. Although that opinion purports to be on the merits, this Court now holds that the Texas court's ruling that Superior Oil's claim under the Due Process Clause "does not present a justiciable matter under the Fourteenth Amendment," 628 S.W.2d at 96, was not a final judgment "on the merits" for res judicata purposes.

## II. JUSTICIABILITY

Federal justiciability is a jurisdictional doctrine,[4] derived from the article III limitation of federal judicial power to "cases" and "controversies." The requirement of justiciability prohibits federal courts from sitting in judgment over matters not presented in the context of live controversies between parties who have adverse interests or over matters not proper for judicial determination. Four separate criteria of justiciability have been fashioned by the courts: (1) the parties must have standing to present the claim, (2) the case must not be moot, (3) the claim must not present a hypothetical dispute or call for the court to render an advisory opinion, and (4) the claim must not present a "political question." *See* 6A *Moore's Federal Practice* § 57.11 (2d ed. 1982).

■ The Texas court opinion relies on *Hunter v. City of Pittsburgh,* 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), indicating that the court viewed the instant controversy to be non-justiciable because it presented a political question. It is the hallmark of a political question that the matter be constitutionally committed to another branch of government.[5] In *Hunter,* the United States Supreme Court refused to hear a claim by citizens and taxpayers of the City of Allegheny that the city's annexation by the City of Pittsburgh had violated their right to due process of law. The Court declared that "[t]he power [of municipal incorporations] is in the State, and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it." *Id.* at 179, 28 S.Ct. at 47. Although *Hunter* does not express its holding in terms of political question non-justiciability, many subsequent lower federal court opinions have cited *Hunter* in support of the doctrine.[6]

■ Because the Texas court's holding, that Superior Oil's claim was not justiciable because it presented a political question, was a jurisdictional decision, it was not a judgment "on the merits," and will not serve as a bar under res judicata principles

---

**3.** At that time an appeal was pending before the Texas Supreme Court. Although under Texas law the pendency of appeal vacates the res judicata effect of an otherwise final judgment, this Court determined that under the federal doctrine pendency of appeal does not. *Superior Oil Co. v. City of Port Arthur,* 535 F.Supp. 916, 920–21 (E.D.Tex.1982).

**4.** *See, e.g., McGrath v. Kristensen,* 340 U.S. 162, 167, 71 S.Ct. 224, 228, 95 L.Ed. 173 (1950).

**5.** "When a court finds that an issue presented to it is political, it is in fact declaring that someone other than itself must make the ultimate determination of that issue. Even if a violation of the Constitution be assumed, a

federal court will not adjudicate a political matter." 6A *Moore's Federal Practice* § 957.14 at 51–141 (2d ed. 1948).

**6.** *See, e.g., Deane Hill Country Club, Inc. v. City of Knoxville,* 379 F.2d 321 (6th Cir.), *cert. denied,* 389 U.S. 975, 88 S.Ct. 476, 19 L.Ed.2d 467 (1967); *Detroit Edison Co. v. East China Township School District No. 3,* 247 F.Supp. 296 (E.D.Mich.1965), *aff'd,* 378 F.2d 225 (6th Cir.), *cert. denied,* 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 284 (1967); *Hammonds v. City of Corpus Christi,* 226 F.Supp. 456 (S.D.Tex.1964), *aff'd,* 343 F.2d 162 (5th Cir.), *cert. denied,* 382 U.S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965).

to adjudication of that claim in this Court. The Federal Rules of Civil Procedure explicitly exclude jurisdictional decisions from the definition of dismissals on the merits:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, *other than a dismissal for lack of jurisdiction . . .* operates as an adjudication upon the merits.

Fed.R.Civ.P. 41(b) (emphasis added). This reflects the common law principle that judgments in which the merits could not be reached would not bar a subsequent action on the same claim, a principle fully explained in *Saylor v. Lindsley,* 391 F.2d 965 (2d Cir.1968):

> The requirement that a judgment, to be *res judicata,* must be rendered "on the merits" guarantees to every plaintiff the right once to be heard on the substance of his claim. Thus, ordinarily, the doctrine may be invoked only after a judgment has been rendered which reaches and determines "the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form, and, at common law, a dismissal on a ground which did not resolve the substantive merit of the complaint was not a bar to a subsequent action on the same claim.

*Id.* at 968 (citations omitted); *see Truvillion v. King's Daughters Hospital,* 614 F.2d 520 (5th Cir.1980); *Arrowsmith v. United Press International,* 320 F.2d 219 (2nd Cir.1963); *Vlavianos v. The Cypress,* 171 F.2d 435 (4th

Cir.1948); *Sachs v. Ohio Nat. Life Ins. Co.,* 148 F.2d 128 (7th Cir.1945). Specifically, dismissals for non-justiciability have been held under this principle not to support res judicata. *E.g., Gregory v. Mitchell,* 634 F.2d 205 (5th Cir.1981) (standing); *Payne v. Panama Canal Company,* 607 F.2d 155 (5th Cir.1979) (mootness).

 Nor will the doctrine of "direct estoppel" operate to bar the present action. Under direct estoppel, a decision on a jurisdictional issue, while not reaching the merits of the case, nevertheless precludes relitigation of that particular issue. *See Restatement of Judgments* §§ 49, 195 (1942). Application of direct estoppel in federal cases is limited to cases in which the issue has been previously decided in a federal forum, according to federal law.[7] In addition, a state court's decision as to its *own* jurisdiction may preclude relitigation of that issue in federal court.[8] In contrast, however, Port Arthur relies on the Texas court's construction of the *federal* jurisdictional doctrine of nonjusticiability of political questions. Because that doctrine is derived from the article III limitation on the power of federal courts, it is a solely federal doctrine. The Texas courts may fashion a Texas justiciability doctrine by analogy, absorbing the federal doctrine as they interpret it, but the Texas doctrine will apply only to Texas courts. The Texas courts have no authority to determine how the federal doctrine will apply to federal courts.[9] Although the Texas court analo-

---

**7.** *See, e.g., Stewart Securities Corp. v. Guaranty Trust Co.,* 597 F.2d 240 (10th Cir.1979); *Napper v. Anderson, Henley, Shields, Bradford & Pritchard,* 500 F.2d 634 (5th Cir.1974); *Myers v. Ampex, Inc.,* 491 F.2d 1103 (5th Cir. 1970); *Stuhl v. Tauro,* 476 F.2d 233 (1st Cir. 1973); *Barzin v. Selective Service Local Board No. 14,* 446 F.2d 1382 (3rd Cir.1971); *New Orleans Stevedoring Co. v. United States,* 439 F.2d 89 (5th Cir.1971); *Estevez v. Nabers,* 219 F.2d 321 (5th Cir.1955); *Ripperger v. A.C. Allyn & Co.,* 113 F.2d 332 (2nd Cir.1940).

**8.** *E.g., American Surety Co. v. Baldwin,* 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932) (Idaho Supreme Court's decision that their state courts had jurisdiction to hear a claim precludes a federal court, under Full Faith and

Credit Clause and 28 U.S.C. § 1738, from relitigating that issue.

**9.** Absent a federal law which explicitly turns on state law, a state court interpretation of state law will not bind a federal court in interpreting its own law, no matter how analogous. *Compare Evans v. Weaver Mfg. Co.,* 582 F.2d 1250 (10th Cir.1978) (state court's decision that it lacked in personam jurisdiction under its long-arm statute directly estopped relitigation of in personam jurisdiction in federal court, because federal in personam jurisdiction turned on state statute) *with Parsons v. Chesapeake & Ohio Railway Co.,* 375 U.S. 71, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963) (state court's determination on state forum non conveniens will not preclude litigation of federal forum non conven-

gized to federal doctrine, it did not apply federal doctrine. Thus, the issue of *federal* justiciability was not previously decided. To read the Texas opinion as a decision under the federal doctrine would permit a state court to bind a federal court through an advisory opinion on a uniquely federal jurisdictional doctrine having no bearing on state courts or their law. Thus it is incumbent upon this Court to decide the federal justiciability question.

## III. THE POLITICAL QUESTION AND JUSTICIABILITY

■ It is clear to this Court that Superior Oil's claim does not present a political question, but rather a justiciable case or controversy within the meaning of article III. An examination of Supreme Court decisions since *Hunter* confirms that "[t]he political question doctrine has been sharply narrowed, and the range of government action within which the Court has sanctioned judicial interference quite considerably broadened," 6A *Moore's Federal Practice* § 57.11 at 57–98 (2d ed. 1982), to the extent that it presents no jurisdictional barrier to this Court's reaching the merits of Superior Oil's claim.

The Supreme Court has never interpreted *Hunter* as a complete bar to suits challenging municipal annexations and taxing actions. In *Myles Salt Co. v. Board of Commissioners of the Iberia at St. Mary Drainage Dist.,* 239 U.S. 478, 36 S.Ct. 204, 60 L.Ed. 392 (1916), the Court invalidated a Louisiana parish's inclusion of an island within a drainage district for tax purposes, because none of the benefits of the district would accrue to the island. The Court stated clearly that there were limits to the immunity of a state's annexation and taxation schemes from constitutional scrutiny:

There is no doubt that the legislature of a State may constitute drainage districts and define their boundaries or may delegate such authority to local administra-

iens in federal court, although principles are analogous).

**10.** *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978),

tive bodies, as, in the present case, to the Police Juries of the parishes of the State, and that their action cannot be assailed under the Fourteenth Amendment *unless it is palpably arbitrary and a plain abuse.*

*Id.* at 481, 36 S.Ct. at 205 (emphasis added).

In *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), the Court held that the petitioners had stated a cause of action—deprivation of their right to vote under the fifteenth amendment—even though the alleged deprivation had occurred through a "political" redefinition of municipal boundaries by the state legislature. The Court made clear that *Hunter* does not stand as a complete bar to constitutional challenges to annexations by state political subdivisions.

The respondents invoke generalities expressing the State's unrestricted power—unlimited that is, by the United States Constitution—to establish, destroy, or reorganize by contraction or expansion its political subdivisions, to wit, cities, counties, and other local units. We freely recognize the breadth and importance of this aspect of the State's political power. To exalt this power into an absolute is to misconceive the reach and rule of this Court's decisions in the leading case of *Hunter v. Pittsburgh,* 207 U.S. 161, [28 S.Ct. 40, 52 L.Ed. 151] and related cases . . . .

... All that [*Hunter*] held was (1) that there is no implied contract between a city and its residents that their taxes will be spent solely for the benefit of that city, and (2) that a citizen of one municipality is not deprived of property without due process of law by being subjected to increased tax burdens as a result of the consolidation of his city with another.

*Id.* at 342–43,[10] 81 S.Ct. at 127–128.

The leading case outlining the modern political question doctrine is *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). There is a marked difference be-

cited by the Texas court of civil appeals and relied upon by Port Arthur to support the conclusion that *Hunter* is a justiciability case, says merely that *Hunter* "continues to have substantial constitutional significance in emphasizing

tween the doctrine as it is explained in *Baker* and as it might be read from *Hunter*. *Baker* clearly sets forth the criteria for determining the applicability of the doctrine:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of respect due to coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.
>
> *Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence.* The doctrine of which we treat is one of "political questions," not one of "political cases." The Courts cannot reject as "no law suit" a bona fide controversy as to whether some action denominated "political" exceeds constitutional authority.

369 U.S. at 217, 82 S.Ct. at 710 (emphasis added).

None of these features is inextricably tied to Superior Oil's claim; it presents a straightforward question of interpretation of the fourteenth amendment, a traditional function of the federal judiciary, *see, e.g., Powell v. McCormack,* 395 U.S. 486, 548–49, 89 S.Ct. 1944, 1978, 23 L.Ed.2d 491 (1969). There is no textually demonstrable constitutional commitment of this issue to the states; there are manageable judicial standards to resolve this conflict; there is no need for any initial policy determination that this Court is not well-equipped to make; a decision by this Court will not demonstrate a lack of respect for a coordinate branch of government; there is no unusual need for unquestioning adherence to Port Arthur's annexation; and there is no potential for embarrassment from conflicts between various departments. In short, Superior Oil's claim presents none of the unusual aspects cited in *Baker* which might require the application of the political question doctrine.

The Court points out in *Baker* that political questions have traditionally arisen in a limited number of specific areas [11]—none of which are implicated in this suit—and that the doctrine is an embodiment of the separation of powers between the federal judiciary and the coordinate branches of the federal government, rather than the federal judiciary's relationship to the states.[12] Superior Oil's claim does not present a political question under *Baker,* and this Court must reach the merits of that claim.

IV. THE MERITS—PORT ARTHUR'S LAND GRAB

█ It is an old and fundamental principle that for a tax to be legitimate under the Constitution, there must be a compensating

---

the extraordinarily wide latitude that states have in creating various types of political subdivisions and conferring authority upon them." *Id.* at 71, 99 S.Ct. at 390. While this statement indicates that *Hunter* is an important case to consider when deciding the *merits* of a challenge to an annexation and taxing scheme, it implies that such a challenge is in fact justiciable and that the merits will in fact be reached.

**11.** Foreign relations, dates of duration of hostilities, validity of enactments, status of Indian tribes, and the Guaranty Clause. 369 U.S. at 211–266, 82 S.Ct. at 706–737.

**12.** 369 U.S. at 210, 82 S.Ct. at 706; *see Powell v. McCormack,* 395 U.S. 486, 518, 89 S.Ct. 1944, 1962, 23 L.Ed.2d 491 (1969); *Blount v. Mandel,* 400 F.Supp. 1190, 1194–95 (D.Md. 1975); *cf. Gilligan v. Morgan,* 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973) (challenge to action of Ohio National Guard was held to involve a political question because there was a "textually demonstrable constitutional commitment" to states of issues involving the militia under art. 1, § 8, cl. 16); *accord, Calvin v. Conlisk,* 520 F.2d 1 (7th Cir.1975), *vacated,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976), *cert. denied,* 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976).

benefit returned to the taxpayer from the taxing authority.

> The power of taxation, indispensable to the existence of every civilized government, is exercised upon the assumption of an equivalent rendered to the taxpayer in the protection of his person and property, in adding to the value of such property, or in the creation and maintenance of public conveniences in which he shares, such, for instance, as roads, bridges, sidewalks, pavements, and schools for the education of his children. If the taxing power be in no position to render these services, or otherwise to benefit the person or property taxed, ... the taxation of such property ... partakes rather of the nature of an extortion than a tax, and has been repeatedly held by this court to be beyond the power of the legislature and a taking of property without due process of law.

*Union Refrigerator Transit Co. v. Kentucky,* 199 U.S. 194, 202, 26 S.Ct. 36, 37, 50 L.Ed. 150 (1905) (citations omitted). The fourteenth amendment does not require that the taxpayer receive a sound bargain or strict quid pro quo in services provided for taxes paid; but it does prohibit the imposition of a tax when no benefits whatsoever are returned to the taxpayer or when the benefits returned are negligible.

> [W]e are not dealing with disputable grounds of discretion or disputable degrees of benefits, but with an exercise of power determined by considerations not of the improvement of plaintiff's property but solely of the improvement of the property of others—power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind.

*Myles Salt Co., supra* 239 U.S. at 485, 36 S.Ct. at 206. For a tax to violate the Due Process Clause, there must be "such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation—to spoliation under the guise of exerting the power of taxing.'" *Dane v. Jackson,* 256 U.S. 589, 599, 41 S.Ct. 566, 568, 65 L.Ed. 1107 (1921) (citations omitted).

This Court conducted a full trial on the merits of Superior Oil's claim and, as indicated in the Court's prior Opinion and Order, 535 F.Supp. at 918, has made findings that are dispositive of that claim. Port Arthur's annexation was nothing more than a land grab, motivated solely by a lust for tax revenue and having no relation to the traditional purposes of municipal government and its legitimate powers. The services provided by Port Arthur to Superior Oil are merely post hoc attempts to justify the burden and are insignificant compared to it. The disparity between the tax imposed and the benefits received was clearly so flagrant and palpable as to amount to an arbitrary taking of property without compensation. Accordingly, the annexation of Superior Oil's property and the resultant tax assessed upon it violates the Due Process Clause of the fourteenth amendment to the Constitution.

Therefore, it is hereby DECLARED that the annexation Ordinance No. 79–116, adopted on December 10, 1979, by Port Arthur, constitutes a deprivation of property without due process of law, in violation of the United States Constitution, and it is ORDERED that the annexation be set aside.