# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 11, 2023

Lyle W. Cayce
Clerk

No. 22-50924

_____

Judy Harward; Brent Harward; 3325 Westlake Owners, L.L.C.; Kirk Fritschen, *as trustee of* the 3705 Westlake Trust; 4200 Rivercrest, L.L.C.; Et al.,

*Plaintiffs—Appellants,*

*versus*

City of Austin,

*Defendant—Appellee.*

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-95

_____

Before Richman, *Chief Judge,* Jones, and Ho, *Circuit Judges.*

Per Curiam:

The district court dismissed claims brought by Texas property owners as barred from federal court jurisdiction by the Tax Injunction Act. We hold that, apart from two minor exceptions, the property owners do not ask the court to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law." 28 U.S.C. § 1341. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

No. 22-50924

## BACKGROUND

A 128-year confluence of Texas laws, city charters, and city ordinances has caused confusion regarding the legal status of certain properties along the shoreline of Lake Austin.  In 2019, the City of Austin, Texas, issued an ordinance (1) declaring that the shoreline properties are within the city's full purpose jurisdiction; (2) repealing a 1986 ordinance that putatively declared the shoreline properties to be within the city's limited-purpose jurisdiction but promised not to tax those properties until the city made city services available to them; and (3) announcing that the shoreline properties are subject to taxation by the city, albeit without providing city services.

Owners of the shoreline properties contend that their properties lie within the city's limited-purpose or extraterritorial jurisdiction and that the 2019 ordinance constitutes an illegal annexation attempt.  The owners asserted claims under the due process, equal protection, takings and ex post facto clauses of the Constitution, together with state law claims, and sought various declarations, injunctions, and writs of mandamus.  They alternatively seek just compensation for the taking of their properties' jurisdictional status, the provision of city services, or disannexation.  The district court, at the recommendation of the magistrate judge, dismissed all claims without prejudice as barred by the Tax Injunction Act.  28 U.S.C. § 1341  Plaintiffs appeal that judgment.

## DISCUSSION

The TIA bars district courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  The act applies to municipal taxes. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 n.6 (5th Cir. 1998).

No. 22-50924

It precludes both injunctive and declaratory relief. *California v. Grace Brethren Church*, 457 U.S. 393, 411, 102 S. Ct. 2498, 2509 (1982). And it serves as a "broad jurisdictional impediment to federal court interference with the administration of state tax systems." *Home Builders*, 143 F.3d at 1010 (quotation marks and citation omitted). "Whether the district court was prevented from exercising jurisdiction over the case because of the Tax Injunction Act is a question of subject matter jurisdiction which we review *de novo*." *Washington v. Linebarger, Goggan, Blair, Pena & Sampson, LLP*, 338 F.3d 442, 444 (5th Cir. 2003).

Plaintiffs contend that they do not challenge the city's right to assess, levy, or collect taxes on properties that are within its full-purpose jurisdiction. Instead, they challenge the procedure by which the city declared their properties to be within its full-purpose jurisdiction. The city, on the other hand, argues that this case is about taxes. Observing that Plaintiffs mentioned the word *tax* over 100 times in their complaint, the city contends that the relief sought by Plaintiffs would restrain or prohibit its tax collection, thereby depriving the city of both current and future tax revenue. The city posits that the "action's objective aim" is to invalidate an ordinance that effectively requires Plaintiffs to pay city taxes.

The parties' dispute hinges on two Supreme Court cases.[1] In *Direct Marketing Association v. Brohl*, the plaintiff challenged a Colorado statute that required certain retailers to "notify Colorado purchasers that sales or use tax is due on certain purchases . . . and that the state of Colorado requires the purchaser to file a sales or use tax return." 575 U.S. 1, 5, 135 S. Ct. 1124, 1128

---

[1] The parties both cite *Franklin v. United States*, 49 F.4th 429 (5th Cir. 2022). But that case is of limited value. There, the challenged actions' illegality depended on the unlawfulness of the tax assessment. *Id.* at 435. The exact opposite relationship is at issue here: The tax assessments' illegality depends upon the unlawfulness of the 2019 ordinance.

(2015) (quoting COLO. REV. STAT. § 39-21-112(3.5)(c)(I)). The Court stated that the "TIA is keyed to the acts of assessment, levy, and collection themselves." *Id.* at 12, 1131. It proceeded to define each of those terms and held that the challenged statute did not fall within any of them. *Id.* at 9–11, 1130–31. The Court then assessed whether the requested relief would nonetheless "restrain" such activities. Accordingly, the "question—at least for negative injunctions—is whether the relief to some degree stops 'assessment, levy or collection,' not whether it merely inhibits them." *Id.* at 14, 1133. Based on these conclusions, enjoining the statute at issue would merely *inhibit* Colorado's assessment, levy, and collection of taxes, and the TIA did not apply. *Id.*

The Court elaborated on *Direct Marketing* six years later in *CIC Services, LLC v. IRS*, 141 S. Ct. 1582 (2021).[2] There, a plaintiff challenged a reporting requirement that could result in a tax penalty if the plaintiff failed to comply. *Id.* at 1589. After determining the reporting requirement was not an act of assessment or collection, the Court evaluated whether "the action's objective aim" was to "restrain" tax assessment or collection. *Id.* The Court answered this question in the negative even though, "if the suit succeed[ed], [the plaintiff] w[ould] never have to worry about the tax penalty." *Id.* at 1591. In distinguishing the action's "after-effect" from "its substance," the Court looked to the claims brought, the injuries alleged, and, most importantly, the relief sought. *Id.* at 1589–90. For instance, it found that the reporting requirement "inflict[ed] costs separate and apart from the statutory tax

---

[2] *CIC Services* addressed the Anti Injunction Act, 26 U.S.C. § 7421(a), which is the TIA's federal analogue. Courts "assume that words used in both Acts are generally used in the same way." *Direct Mktg.*, 575 U.S. at 8, 135 S. Ct. at 1129. Cases interpreting the AIA are therefore "highly persuasive in construing similar language in the" TIA. 17A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 4237 (3d ed.).

penalty," *id.* at 1591, was "several steps removed" from the tax, *id.*, and was also backstopped by criminal penalties, *id.* at 1591–92.

The import of these cases is that, for the TIA to apply, the requested relief must "to some degree stop[ ]" the assessment, levy, or collection of state taxes. *Direct Mktg.*, 575 U.S. at 14, 135 S. Ct. at 1133. But such a finding is insufficient where the relief would do so only indirectly. In that scenario, a court must make a more exacting examination to determine from the "face of the taxpayer's complaint" whether the "target of a requested injunction is a tax obligation." *CIC Servs.*, 141 S. Ct. at 1589–90. Considerations include whether the targeted law inflicts costs separate and apart from the tax, whether the targeted law bears a close relationship to the tax, and whether the relief attempts to circumvent a state's "pay-now-sue-later" tax scheme. *Id.* at 1591–92.

Plaintiffs here seek the invalidation of the 2019 ordinance and a declaration that their properties are within the city's extraterritorial or limited purpose jurisdiction. Although the ordinance authorized the taxation of Plaintiffs' properties, the county tax assessor had to add their properties to the Travis County Appraisal District's rolls, appraise the properties, determine their tax liabilities, levy the taxes, collect the taxes, and remit those payments to the city. *See* TEX. TAX CODE §§ 25.01–25.24 (appraisal), 26.01–26.18 (assessment), 31.01–31.12 (collection). The ordinance's authorization itself is therefore not an act of assessment, levy, or collection. It is no more than a prerequisite to assessment. *See Direct Mktg.*, 575 U.S. at 9, 135 S. Ct. at 1130 (defining *assessment* as "the process by which [the taxpayer's liability] is calculated"); *see also* TEX. TAX CODE § 21.01.

Assuming that Plaintiffs' requested relief would indirectly prevent the city from assessing, levying, and collecting future taxes, *see* TEX. TAX CODE § 21.01, TEX. LOC. GOV'T CODE §§ 43.130(c), 42.902, a more exacting

analysis must be made as to the TIA's applicability.[3] *See CIC Servs.*, 141 S. Ct. at 1593. That analysis reveals that Plaintiffs challenge a "separate legal mandate," not a tax. *Id.* As detailed above, the taxes themselves are several steps removed from the ordinance. Moreover, the ordinance imposes costs separate and apart from the property taxes—it subjects the Plaintiffs and their property to the city's broad home rule authority. *See City of Galveston v. Texas*, 217 S.W.3d 466, 469 (Tex. 2007) (Home-rule municipalities have "all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter." (quotation marks and citation omitted)). Plaintiffs, moreover, do not seek to circumvent the state's "pay-now-sue-later" scheme. They have dutifully paid their taxes, and if they prevail in invalidating the 2019 ordinance and seek a refund, they must proceed through Texas's tax procedures. *See* TEX. TAX CODE § 41.41(a)(6). Whether and to what extent invalidating the 2019 ordinance affects past and future tax assessments, levies, and collections thus remains in the hands of state authorities.[4]

Two of Plaintiffs' requested remedies, however, must be struck from the complaint. First, they request "a declaration that the City's notices to TCAD that the shoreline properties are within their taxing-unit boundaries are invalid." Second, they seek "a writ of mandamus directing the City to

---

[3] Plaintiffs alternatively request equal municipal services or just compensation for the taking of their properties' jurisdictional status. As such remedies would not stop the assessment, levy, or collection of city taxes, the claims to which these remedies correspond are not barred by the TIA. *See Direct Mktg.*, 575 U.S. at 14, 135 S. Ct. at 1133; *see also Franklin*, 49 F.4th at 434–39 (conducting claim-by-claim TIA analysis).

[4] *Detroit Edison Company v. East China Township School District No. 3*, 378 F.2d 225 (6th Cir. 1967), is not to the contrary. The plaintiffs there challenged the assumption of two annexed school districts' bond-indebtedness. *Id.* at 226. The Sixth Circuit affirmed the dismissal of those claims "under an application of the abstention doctrine," not pursuant to the TIA. *Id.* at 230.

instruct TCAD and the Travis County Assessor-Collector that the shoreline properties are in the City's extraterritorial or limited-purpose jurisdiction." Both of these remedies go beyond the 2019 ordinance and would directly challenge the state's taxing power by affirmatively precluding TCAD from assessment, levy, and collection of future taxes on the Plaintiffs' properties. *See* TEX. TAX CODE §§ 21.01, 41.41(a)(6). They are thus barred by the TIA.

In the alternative, the city invites us to affirm the district court's decision based on several abstention doctrines, the political question doctrine, and pleading defects. Plaintiffs agree that because the district court did not rule on these issues, they are best left for the district court to resolve on remand. We decline to reach these issues in the first instance, *See Am. Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 922 (5th Cir. 1993), and we will not address the merits of Plaintiffs' claims. *See Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017).

## CONCLUSION

Apart from two minor exceptions, Plaintiffs do not ask the district court to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law." 28 U.S.C. § 1341. Their claims thus fall outside the TIA. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.